No. 17,596.

ANDY ABEYTA v. CITY AND COUNTY OF DENVER.

(289 P. [2d] 918)

Decided November 7, 1955.   Rehearing denied December 5, 1955.

Messrs. KRIPKE & McLEAN for plaintiff in error.

Mr. JOHN C. BANKS, Mr. JOSEPH E. NEWMAN and Mr. HANS W. JOHNSON for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Writ of error herein was issued to review a judgment of the superior court of the City and County of Denver wherein defendant was adjudged to have violated a city ordinance and sentenced to serve a short term in jail. Trial was de novo upon appeal from the municipal court where similar determination was had.

Involved is Ordinance No. 250, Series of 1950, section 841.2-1, as amended, which reads as follows:

"It shall be unlawful to beat, strike, wound, imprison, or inflict violence on another where the circumstances show malice."

In due time, counsel for defendant filed a motion "for a new trial of the issues herein upon the following grounds, to wit: (1) insufficiency of the evidence; (2) errors in law."

As ground for reversal of the judgment of the trial court counsel for defendant in this Court specifies but

one general claim of alleged error, that being that the evidence was insufficient to warrant conviction of his client. Under this general specification, however, he proceeds in his brief to present various contentions of alleged error, both with respect to admission of evidence and the conclusions of the trial court as to certain matters of law. These contentions fall generally under one or more of the following topics, which are discussed in defendant's brief: (1) Alleged error of the court in permitting Officer Kiest of the Denver Police Department to testify to the statement of Mary Montoya to the effect that defendant had cut her for the reason and upon the ground that same was hearsay and did not fall within the scope of res gestae. (2) Failure on the part of the city to present evidence to show that defendant had a knife thus creating a presumption that no knife was used, or if a knife was used, that defendant was not the one who wielded it. (3) That the city failed to show malice. (4) General lack of material evidence to sustain the judgment.

Before discussing the foregoing we note a recently injected issue. Mary Montoya, the victim of the incident, being called by the city as its first witness, testified in complete contradiction to her testimony given in the municipal court. Counsel for the city claimed surprise and asked to leave to cross-examine Mary as a hostile witness. Objection was interposed on the ground of insufficient foundation, which was then laid by further questions by both court and counsel, as a result of which it clearly appears that Mary was not only hostile, but corrupt and contemptuous as well. Apparently she had, in the interim, determined to shield and protect the defendant, who is her brother-in-law. Counsel for defendant also cross-examined her and sought to impeach her with respect to certain details. Aside from the abovementioned objection with respect to foundation, no objection to her further examination was made on behalf of defendant. The contention presently urged was not

contained in the motion for new trial, nor is it mentioned in defendant's brief in this Court, nor assigned as one of the points of alleged error. It was first interposed during oral argument before this Court after the briefs were filed and the cause fully at issue. Here defendant's counsel presented for the first time, and argued at length, that the cross-examination of Mary by the city attorney should not have been permitted for the reason that the city attorney was not surprised by her about face. The point, while interesting, is probably without merit, and in any event comes too late to warrant consideration by this Court.

■■ Officer Kiest testified that he and his companion officer drove past the Sunshine Inn on Larimer Street in the early morning hours of June 13, 1954. They noticed a disturbance inside the inn; they immediately parked their patrol car and entered; the crowd was in turmoil and great excitement prevailed. The other officer proceeded to assist the bartenders in controlling the crowd while the witness went to Mary's aid. As he entered he found Mary cut and bleeding beside one of the booths with another woman trying to hold her up. He, with the assistance of others, carried her out to the sidewalk where they laid her thereon near the curb and called an ambulance. He said her condition was very poor, that she had lost considerable blood, that she had been drinking and that she was hysterical and angry. The defendant was standing apart from anyone else and five or six feet from Mary when one Frank Carrerra, referred to in the record as Mary's boyfriend, came up. Mary, pointing to Andy Abeyta, said to Carrerra: "He cut me." Carrerra then started to attack Abeyta and the officer had to step in between them. All of these events testified to by Officer Kiest occurred very shortly after the attack on Mary, during the period of heat, excitement, anxiety and confusion. They fall squarely within the elements of res gestae, as laid down in *Graves v. People*, 18 Colo. 170, 32 Pac. 63, which is still the law in

Colorado. *Baney v. People,* 130 Colo. 318, 275 P. (2d) 195. The case of *Pomeroy v. People,* 116 Colo. 518, 182 P. (2d) 139, as well as other cases cited by defendant's counsel, including the Baney case, all relate to instances where the statements objected to were not made "under the immediate spur of the transaction" but long afterwards and are not in point. The trial court with complete propriety may have considered this statement by Mary as a part of the res gestae under the well recognized rule that "Whether specific statements are admissible as part of the res gestae is a matter within the sound discretion of the trial court, the determination of which is ordinarily conclusive upon appeal, in the absence of a clear abuse of discretion." 20 Am. Jur., section 663, page 557. *Patterson v. Cochran & McClure Co.,* 308 Ill. App. 348, 31 N.E. (2d) 825; *Maynard v. Hall,* 61 Ariz. 32, 143 P. (2d) 884, which was cited with approval in *Stahl v. Cooper,* 117 Colo. 468, 471, 190 P. (2d) 891.

Defendant's counsel criticize the city attorney for his failure to present evidence showing that the defendant had a knife, and contend that this failure in the evidence justifies the court drawing the inference that no knife was used. The victim was slashed deeply under the arm, that wound requiring three or four stitches to close, and also across the face. Such wounds are not inflicted by a hairpin but require a knife or similar sharp instrument. Furthermore, under the defense employed, the matter was of no materiality or relevancy. Defendant did not contend accident, or that someone else had done it, or similar defense, but simply insists that he was not present at the time of the incident and knew nothing about it. He testified in effect that he knew nothing about anything in connection with Mary being cut or injured. "Q. Did you see her get cut? A. No. Q. Do you know if she was cut? A. No."

The trial court might have drawn the inference for which counsel contends, yet nevertheless saw fit to find

the opposite as the facts, being well within its province as the trier of the facts.

■ The city ordinance refers to malice and it is contended that this the city failed to show. Defendant's counsel in his brief concedes "That malice may be inferred from the circumstances where there has been a wounding with a deadly weapon." We already have referred to the character of the wounds inflicted upon the victim of this assault, and referring again to the testimony of Officer Kiest we find in his statement in addition to describing the wounds, that there was blood all over the place: in the booth, on the floor and out on the sidewalk, and that in his judgment at that time Mary was in a bad condition. This certainly is ample to justify the finding of the court that whoever committed the act had malice in his heart.

In announcing its judgment the trial court said that the witness Mary Montoya was unworthy of belief even under oath and regardless of her testimony found the defendant guilty. From such statement it is apparent that the trial court likewise disbelieved the defendant and relied alone upon the testimony of Officer Kiest together with the surrounding facts and circumstances as developed at the hearing. A careful reading of the officer's testimony leads one to the firm conclusion that he was honest, fair and impartial. The trial court sitting without a jury was the trier of the facts, and from the facts submitted concluded that the defendant was guilty. The record fully justifies this determination.

Mr. Justice Moore dissents.

Mr. Justice Lindsley not participating.