No. 23368.

JOHN JUNIOR PADILLA v. THE PEOPLE OF THE STATE OF COLORADO.
(470 P.2d 846)

Decided May 4, 1970.

CISNEROS & HUCKEBY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

JOHN JUNIOR PADILLA, along with Eugene Paul Vigil (See *Vigil v. People,* 171 Colo. 518, 470 P.2d 837) was tried and found guilty of murder in the first degree and of conspiracy to commit murder. Both were sentenced to life imprisonment in the state penitentiary on the first count and given concurrent sentences on the second count. In addition to Padilla and Vigil, two other persons were also charged but were not tried jointly with these defendants.

Evidence of the homicide, which was committed during a robbery, was that on August 28, 1964, two armed men entered the Seagrams Inn in Denver at 4700 Claude Court at about 10:45 a.m. One gunman, wearing a stocking over his face, and white gloves, ordered George Albert Hanson, an owner of the Inn, to walk to the rear of the establishment where a safe was located. Hanson preceded the gunman to the rear. The other gunman, who wore a hood over his head, remained guarding the front door of the Inn. When Hanson and the stocking-masked gunman were out of sight of all other persons in the bar, three rapid shots were heard, followed by a fourth shot. The stocking-masked man (Padilla) staggered back into the main bar, stated he was shot, and thereupon the hooded gunman ran out the front door. Hanson was found lying in the hallway mortally wounded. A witness testified that he saw a man run from the Inn, remove the hood, jump into the passenger side of a white 1959 Ford in which there was another person in the driver's seat. Police located a white Ford such as the one described by the witness a short distance from the Inn a few minutes after the crime was reported. Vigil was alleged by the People to be the driver of the "get-away" car. A fingerprint alleged to be that of defendant Vigil was subsequently taken from the left front wing vent of this car.

There was evidence that two cars were used in the "get-away." A witness for the People, one Sharpley, testified that he saw the white Ford traveling very fast before it stopped near a green and white Chevrolet, and that he

observed two men run from the Ford to the Chevrolet and speed away. He identified Vigil as one of the men.

Separate briefs have been submitted on behalf of each defendant seeking reversal of the trial court's judgment. Because both Padilla and Vigil raised the same arguments concerning qualification of the jury for the death penalty as a claimed violation of their constitutional rights, the common assignments of error were consolidated for oral argument before this court. We will discuss those assignments numbered I through V in this case plus those points of error which Padilla claims affected him individually. Vigil's assignments of error in the brief filed on his behalf are treated in *Vigil v. People, supra.*

I.

The Colorado statute (C.R.S. 1963, 40-2-3(1)) which provides that the jury in a homicide case must first determine the question of guilt and that if it find murder in the first degree must then set the penalty at either death or life imprisonment is not challenged. The first assignment of error puts in issue the method of qualifying the jury. It is argued that during the voir dire examination the qualification of the jury was such as to deprive the defendant of the right to a representative cross section of the community and that the qualification of a jury for the death penalty excludes a class of persons forming a substantial segment of the population of the county. Defendant would have us overrule or modify the previous decisions of this court in *Jones v. People,* 155 Colo. 148, 393 P.2d 366; *Gallegos v. People,* 116 Colo. 129, 179 P.2d 272; *Demato v. People,* 49 Colo. 147, 111 P. 703. By the authority of those cases it has been long recognized in Colorado that a prospective juror must be willing to consider the alternative punishments which it alone may impose in connection with first degree murder. The right of the prosecution to qualify the jury has consistently been upheld by the cases cited.

However, the defendant argues that he has a constitutional right to a trial by a jury of his peers and that such

a jury was denied him in this case because 29.3% of the jury panel were excluded on challenge for cause because of their unwillingness to consider under any circumstances the imposition of the death penalty. Cited in support of the argument is *Crawford v. Bounds,* 395 F.2d 297 (4th Cir.) wherein a three-judge panel held:

"* * * we do hold that belief against capital punishment on the part of jurors who are vested with a dichotomy of functions — the determination of the issue of guilt, and, if guilt is found, the degree of punishment to be imposed — cannot be allowed to disqualify a substantial part of the venire when it is not established that the views of the persons so disqualified will preclude them from making a fair determination on the issue of guilt, aside from the issue of punishment. Such disqualification prevents the jury in its function of determining the issue of guilt from being fairly representative of the community, and thus violates equal protection of the laws."

Two of the panel, concurring in the result, based their decision on the denial of due process and infringement of the right to trial by a jury rather than denial of equal protection. About a month after the final brief was filed herein the United States Supreme Court in *Bounds v. Crawford,* 393 U.S. 76, 89 S.Ct. 234, 21 L. Ed.2d 62, vacated the circuit court judgment and remanded the case for further consideration in light of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776, *rehearing denied* 393 U.S. 898, 89 S.Ct. 67, and for consideration of the other constitutional questions raised in the case.

In *Witherspoon* the Supreme Court was concerned with the verdict of guilty and a sentence of death by an Illinois jury from which 42 persons were excused for cause on the basis of the fact that they did not "believe in the death penalty" or had "conscientious or religious scruples against the infliction of the death penalty" without any effort on the part of the court to determine if despite these beliefs or scruples they could return a verdict of death. In *Witherspoon* Mr. Justice Stewart,

expressing the views of five members of the court, stated: "Specifically, we hold that a *sentence of death* cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced *general* objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally *be put to death* at the hands of a tribunal so selected." (Emphasis added.)

On the same day as it decided *Witherspoon* the United States Supreme Court announced *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, in which it was stated:

"In *Witherspoon v. Illinois, ante,* p. 510, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. *Duncan v. Louisiana, ante,* p. 145; *Turner v. Louisiana,* 379 U.S. 466, 471-473; *Irvin v. Dowd,* 366 U.S. 717, 722-723. We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarly 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon.* Accordingly, we decline to reverse the judgment of conviction upon this basis."

*Witherspoon* does not support the argument of defendant in this case, not only because the death penalty

was not imposed by the jury but also because in the case at bar no person was excused for cause who unequivocally stated a willingness and an ability to set aside his convictions against the death penalty and impose either one of the penalties provided by law. In the case 'at bar the jurors were scrupulously examined by counsel and in some cases by further questioning by the court and those excluded for cause were only the persons who stated that they would not, under any circumstances, consider the penalty of death because of conscientious objections thereto.

As this court said in *Demato v. People, supra:*
"The juror's oath prescribes his duty. By the obligation thus imposed, he is to well and truly try the issues joined and a true verdict render according to the law and the evidence. The law-making power of the state, namely, the general assembly, has provided that capital punishment may be inflicted for murder in the first degree, when the jury finding such verdict so determines, or life imprisonment, in the discretion of the jury. In other words, under the law, it is the bounden duty of the jury convicting one of the crime of murder in the first degree to exercise their discretion in fixing the penalty to be imposed. To follow and uphold the law is the duty of courts and juries. Manifestly, one who says he would not exercise the discretion vested in him by law, by declaring under oath that he would not fix the death penalty in a proper case, cannot discharge the duties which his oath prescribes. It would certainly be an anomaly to impose upon a juror the obligation of an oath which he says he will disregard. Clearly, such a person is disqualified to act as a juror in a murder case, for the reason that his attitude on the subject of capital punishment would prevent him from performing his duty in the due administration of the law. He would not carry into effect the whole law, and therefore would not stand indifferent between the state and the accused. — *State v. Melvin,* 11 La. Ann. 535; *State v. Stewart,* 45 La. Ann. 1164; *People*

*v. Majors,* 65 Cal. 138; *Driskill v. State,* 7 Ind. 338; *Stratton v. The People,* 5 Colo. 276; *Spain v. State,* 59 Miss. 19; *Rhea v. State,* 63 Neb. 461; *People v. Tanner,* 2 Cal. 257; *Gross v. State,* 2 Ind. 329; *Greeley v. State,* 60 Ind. 141."

The great weight of authority follows the rule that disqualification of a juror for *inability* to join in a verdict imposing the death penalty is not error where the jury has the duty to determine the defendant's guilt or innocence and his punishment if he is found guilty. *See Pope v. United States,* 372 F.2d 710 (8th Cir.); *United States v. Puff,* 211 F.2d 171 (2d Cir.), *cert. den.* 347 U.S. 963, 74 S.Ct. 713; 98 L.Ed. 1106; 48 A.L.R.2d 560.

## II.

The defendant next contends that the district attorney knew that the case was not a capital case and that by qualifying the jury for the death penalty sought to have a more "conviction minded" jury than otherwise would have been obtainable.

Under the authority of *Ives v. People,* 86 Colo. 141, 278 P. 792, the evidence in the case at bar might be characterized as direct. But, assuming *arguendo* that the People's case appeared at the outset to be based primarily upon circumstantial evidence (thus ruling out the death penalty) we are of the opinion that there were sufficient uncertainties as to what evidence might be developed at the trial to warrant qualifying the jury for the death penalty. We held in *Atencio v. The People,* 147 Colo. 566, 364 P.2d 575, as follows:

"It is true the district attorney, in examining his case prior to presentation in the trial court, might well have concluded that he did not have direct evidence sufficient to warrant the death penalty. However, the charge was first degree murder and it was conceivable that such would be the verdict of the jury. It was entirely possible that an eyewitness might be found after the trial had started, or that upon direct or cross-examination the defendant might have incriminated himself to such an extent that the death penalty could be sought. At the

time these questions were asked no one could tell exactly what the evidence would show. See *State v. Milosovich*, 42 Nev. 263, 175 Pac. 139. The charge here grew out of the death of a young girl by violent means under sordid circumstances. Had the defendant's guilt been proved by direct evidence, the district attorney would have been guilty of neglect had he not sought the death penalty. Considering the unpredictability of trials and the circumstances surrounding this case, the district attorney did not act improperly in qualifying the jury to return the death penalty. Under such circumstances the district attorney should be given considerable latitude in the scope of his voir dire of the jury. The court committed no error on this point."

■ The argument that a jury willing to consider imposition of the death penalty is more conviction minded also was answered in *Witherspoon, supra,* wherein it was stated:

"* * * We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. * * *"

*See* also *Bumper v. North Carolina, supra.*

In the case at bar there is a similar lack of evidence upon which to base the conclusion argued for by defendants.

## III.

■■ Citing the case of *Stratton v. People,* 5 Colo. 276, the defendant contends the court erred in dismissing jurors who were able to set aside their convictions regarding the death penalty and follow the instructions of the court. Five jurors are named as having been improperly removed by challenge for cause. The defendant, however, in his brief has only partially stated the testimony of these prospective jurors. We have read their entire testimony and find that each of the jurors in ques-

tion also indicated during his voir dire that he could not under any circumstances impose the penalty. In other words, the testimony of each venireman was internally inconsistent, with the result that his true predilection was unclear. Under such circumstances, whether a particular juror can serve impartially is to be determined by the trial judge, much as the credibility of the witnesses are to be determined by the jury. *See Leick v. People,* 136 Colo. 535, 322 P.2d 674.

## IV.

Defendant further contends that he and Vigil were denied a speedy trial and effective assistance of counsel by two rulings of the trial court.

 As to a speedy trial, the complaint is that the district attorney was permitted to endorse a witness — one Sharpley — almost 14 months after the information was filed, thus making necessary a continuance of the trial for several months. Without unduly lengthening this opinion by detailing all of the steps required to bring this case to trial, it suffices to note that the delay particularly complained of occurred between October 18, 1965 and January 28, 1966, and the defendant had waived all objection to delays occurring prior to October 18. Whether a continuance is to be granted is a matter resting within the trial court's discretion, considering all of the circumstances of the case. *Medina v. People,* 154 Colo. 4, 387 P.2d 733. The constitutional guarantee of a speedy trial has been held to be a trial consistent with the court's business. *Id.* Defendant here has not sustained the burden of showing that the continuance complained of was not consistent with the court's business in that defendant was prejudiced by the continuance.

 The contention of a denial of effective assistance of counsel when the trial court refused to grant a short continuance after a mistrial is similarly without merit. The gist of this argument is that counsel were under great pressure because they had other work which demanded attention at the time, and that they could not

put forth their best defense in behalf of these clients. The record, on the other hand, clearly shows that the defendant had the benefit of a well prepared and extremely skillful defense. There is absolutely no prejudice to the defendant shown by the denial of a continuance at the time in question.

## V.

 The defendant next contends that the court on numerous instances displayed a biased attitude against him and Vigil and in favor of the prosecution, thus depriving each of a fair trial. He cited numerous examples of what is contended to be unfair treatment by the court. Though we decline to enumerate them all, we have carefully considered the instances which were noted by counsel. We find that the record as a whole reveals that the proceeding was fairly conducted.

## VI.

Several assignments of error are made on behalf of defendant Padilla only. We consider them not to be meritorious and only one warrants discussion, to wit: the contention that the court erred in denying Padilla's motion for a severance. He claims the trial jointly with Vigil was prejudicial to him and cites *Seebass v. People*, 116 Colo. 555, 182 P.2d 901. In that case this court held that it was error to deny relief from prejudicial joinder where the petition for severance:

"* * * set forth in exhaustive detail the situation as it pertained to the respective parties defendant * * *. In particulars of controlling importance, there was [sic] pointed out items of evidence clearly competent and admissible as against petitioner's codefendant, but wholly incompetent as against himself. * * * The petition for severance, as we are persuaded, was sufficient in form and ample in statement."

 However, in the case at bar the petition for severance stated grounds for severance *other* than those which defendant argues here. Indeed he does not assert that the reasons now urged were set forth in his petition.

It would unduly complicate this opinion to reiterate here the contents of the petition. However, based upon it and a stipulation entered into as a condition for denial of severance, we hold that the court correctly ruled on the petition which was before it; it could not rule on evidence not before it. Colorado cases have uniformly held that a motion for severance must contain the evidence which is claimed to be incompetent toward the moving party so that the court will be given the opportunity to determine whether the one requesting a severance may be prejudiced by testimony admissible against the co-defendant but not admissible as to him. *Brown v. People,* 124 Colo. 412, 238 P.2d 847; *Robinson v. People,* 76 Colo. 416, 232 P. 672.

The trial court correctly held that the grounds upon which the motion for severance were predicated were not sufficient to require granting of the severance.

The judgment is affirmed.