No. 22884.

JOSEPH WELDON MITCHELL *v*. THE PEOPLE OF THE STATE OF COLORADO.
(476 P.2d 1000)

Decided November 23, 1970.

RICHARD C. WEBSTER, Deputy Public Defender, JERRY ALAN DONLEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THE defendant (plaintiff in error) was convicted of murder in the first degree, and, under the jury's verdict, was sentenced to life imprisonment. We affirm.

On the night of August 21, 1965, Allan Berg was the only attendant at a service station in Colorado Springs. He was found dead in a back room of the station. The death resulted from a gunshot wound in the head.

In separate informations, three persons were charged with this murder, namely, the defendant, Nathan Whitmore and John Major Young, Jr., who was called Frankie. At the trial of the defendant, Whitmore testified along the following lines: that the three planned a robbery of the service station; that when they entered the station, Berg was there alone; that Berg was asked to open the

safe and responded that he could not do so; that Frankie and the defendant, who was holding a gun, took Berg into the back room; that he, Whitmore, went out of the door in front of the station; that he thought he heard a shot inside the station; that very shortly thereafter the defendant and Frankie emerged from the station hurriedly; and that the two caught up with Whitmore. Whitmore then testified, "I asked [the defendant] what happened, and he told me that Frankie had shot the man."

The defendant testified in his own behalf, stating that, while he was at this service station earlier in the day, he was at other places during the period of time in which the homicide was alleged to have occurred. He testified that he had never been behind a sales counter at the station. There was testimony by experts that his fingerprint was found on the back of this counter.

Whitmore testified that no promises or other inducements were given him in exchange for his testimony for the prosecution. In his motion for a new trial the defendant set forth as newly discovered evidence the fact that following the conviction the murder charge against Whitmore was dismissed. After the case was at issue here under writ of error, we remanded it to the trial court for the purpose of conducting a hearing to determine whether Whitmore's testimony was procured by some inducement. *Mitchell v. People*, 170 Colo. 117, 459 P.2d 284 (1969). Accordingly, the trial court conducted a hearing, which did not show any inducement, promise, or benefit for the witness Whitmore's statement. The court again denied the motion for new trial, and, in conformity with our mandate, the case was returned here under the original writ of error.

I.

Whitmore could not be located to testify at the post-remand hearing. There was positive and unequivocal testimony at this hearing by the district attorney, the assistant district attorney who participated in the prosecution, by the attorney for Whitmore, and by several

others that no promises were made to Whitmore in order to obtain his testimony.

■ Attorneys testified in answer to hypothetical questions that in a situation such as this they thought that an attorney in the community, following the standards of care practiced there, would not permit a client to testify in the absence of an inducement. An opinion so expressed in answer to a hypothetical question does not impress us as being sufficient to show the fact which the defendant must establish, *i.e.*, that Whitmore's statement that no inducement was offered was untrue.

■ The attorney representing Young testified that prior to the defendant's trial he inquired of the district attorney as to whether the latter should cause an accomplice, who had become a witness for the state, to become incarcerated in the same penal institution with the persons against whom he testified. This attorney further stated that the district attorney responded, "Young and Mitchell will never see Whitmore again." Except for his qualification that he did not mean that they would not see each other at the trial, according to the testimony of this attorney, the district attorney refused to give any further explanation for his statement. To us this discloses that the district attorney may have had something in mind whereby Whitmore would not be sent to the penitentiary, but it does not constitute sufficient evidence to establish a promise made to Whitmore in order to obtain his testimony.

■■ The attorney for the defendant testified that, subsequent to the time that the charge against Whitmore was dismissed, he asked the district attorney whether a deal had been made. The testimony of the defendant's attorney continues as follows:

"The essense of the conversation was that [the district attorney] told me that there had never been any verbal or oral agreement or deal between himself and [Whitmore's attorney] or Nathan Whitmore. He said — he added, however, and I think I recall, quote, this exactly,

correctly, 'You can do a lot with a shrug of the shoulder and a wink of an eye.' "

Here again we feel that proof of an agreement to give favorable treatment in exchange for testimony cannot be predicated upon "a shrug of the shoulder and a wink of an eye." This testimony makes it easy to speculate that there was some understanding between the district attorney and the defendant's attorney. However, if we commence reversal of criminal convictions on speculation of this sort, we throw reason and justice to the winds. As against positive testimony that there was no agreement, a court cannot predicate a finding of understanding upon gestures which could mean nothing or a dozen different things.

Whitmore's attorney displayed candor when he testified in the post-remand hearing. Before he was appointed to represent Whitmore, Whitmore had given a confession to the police, but had concluded that he was not going to testify for the state against the defendant and Young. The attorney concluded that Whitmore's best chance for the least sentence was to testify for the state and hope for favorable treatment by the district attorney. This attorney earlier had been a presecutor. Some lawyers would feel, as did several who testified here, that Whitmore's attorney was giving dangerous and bad advice when he counseled his client to testify against the defendant and Young. On the other hand, we are certain that other lawyers would agree with the strategy of Whitmore's attorney — at least we can see wisdom in it. It would seem that viewing this by hindsight his counsel was eminently correct.

The motion for new trial on the ground of newly discovered evidence was properly denied.

## II.

The defendant was charged as Joseph Weldon Mitchell, also known as Joey Michelle. This designation of the defendant appears several times in the instructions. The defendant contends that the use of the alias in this

case constituted prejudicial error. The only testimony to support the use of the alias was by Whitmore. On direct examination, Whitmore was asked whether he knew the defendant by any name other than Joseph Weldon Mitchell, to which he answered, "I call him Mitch." Later in the direct examination he was asked whether he also knew the defendant as Joey Michelle. An objection on the ground that the question was leading was sustained. The question was then asked, "Did you know this man under any other name besides 'Mitch' "? Over objection Whitmore was permitted to answer, "I heard somebody call him Joey Michelle, but I never did." It is the argument of the defendant that the leading question, to which an objection was sustained, suggested the last answer. Defendant cites *D'Allesandro v. United States*, 90 F.2d 640 (1937), for the prejudicial effect of aliases. We do not have involved here a long list of aliases as was involved in *D'Allesandro*. We do not agree that by reason of the previous leading question the witness' last answer should not have been permitted. We hold that there was proper basis in this answer to support the use of the alias. Further, use of a single alias was not prejudicial error in this case. *See State v. Loston*, 234 S.W.2d 535 (Mo. 1950), and *Routa v. People*, 117 Colo. 564; 192 P.2d 436 (1948).

### III.

■ The defendant objected unsuccessfully to the admission in evidence of a .22 caliber revolver and four .22 cartridges. The gun was owned by one LaFebre, who testified that on the morning preceding the homicide he loaned the gun to the defendant; and that at that time there were six cartridges in the chamber. Whitmore testified that the defendant carried a .22 revolver with him when Berg was taken into the back room. LaFebre testified that a few days later he observed the gun in his quarters and that it contained five cartridges. LaFebre further stated he later dismantled the gun for cleaning and had not reassembled it when the law officers obtained

it and the cartridges from him to be used as evidence in this case. A special agent of the Federal Bureau of Investigation testified that the bullet which killed Berg could have been fired from the gun; he could not, however, testify definitely that it was from this gun.

The defendant takes the position that the evidence was too inconclusive to identify the revolver as the murder weapon, and therefore, it should not have been admitted. On the contrary, we find sufficient connection between the gun, the crime and the defendant for it to be received in evidence; and, although it was not positively identified, the question involved was one of weight of the exhibits as evidence rather than admissibility. *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965).

## IV.

The defendant claims error in the submission to the jury of a form of verdict imposing the death penalty, arguing that a person cannot suffer the death penalty when the conviction rests on circumstantial evidence alone and that there was no direct evidence of defendant's guilt. 1965 Perm. Supp., C.R.S. 1963, 40-2-3 (3). It is not necessary that an eye witness must see the entire sequence of events. *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427 (1962); and *Covington v. People,* 36 Colo. 183, 85 P. 832 (1906). The statement by the defendant to Whitmore that Frankie had shot the man was an admission which constituted direct evidence of the commission of the crime. *Ives v. People,* 86 Colo. 141, 278 P. 792 (1929); and *Gavin v. People,* 79 Colo. 189, 244 P. 912 (1926). If the defendant and Young were participating in a robbery during the commission of which Young, *i.e.,* Frankie, killed Berg, the defendant was guilty as a principal. If there was direct evidence of the crime, he was subject to the death penalty. C.R.S. 1963, 40-2-3 (1); *Whitman v. People,* 161 Colo. 110, 420 P.2d 416 (1966). The statement by the defendant, when considered in the light of the evidence as to the robbery and other

·evidence, was an admission that Berg had been shot in the perpetration of the robbery.

Judgment affirmed.

MR. JUSTICE KELLEY not participating.