## No. 23822.

GLENN W. LEWIS *v*. THE PEOPLE OF THE
STATE OF COLORADO.
(483 P.2d 949)

Decided April 19, 1971.

William Atha Mason, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Aurel M. Kelly, Special Assistant, for defendant in error.

*En Banc.*

J. Robert Miller, District Judge,* delivered the opinion of the Court.

The defendant, Glenn W. Lewis, was charged with the crime of theft by deception in violation of 1967 Perm. Supp., C.R.S. 1963, 40-5-2(1)(b), in obtaining $120 from the First National Bank of Glenwood Springs, Colorado. The defendant pleaded not guilty and not guilty by reason of insanity. The first trial on the issue of the defendant's sanity was declared a mistrial on the grounds that the burden was incorrectly placed upon the defendant to prove himself insane, rather than upon the prosecution to prove his sanity. A second trial on defendant's sanity was held, at which the jury was instructed that the burden was on the prosecution to prove the defendant sane by a preponderance of the evidence. The jury found the defendant sane. A trial before a different jury was then held on the merits which found the defendant guilty.

Briefly stated, the facts brought forth at the trial on the merits of this case which go to establishing the defendant's guilt are these:

In July 1967, the defendant procured a blank check from an acquaintance, Mary Jean Jury, and without her knowledge or consent, made a check payable to himself in the amount of $300, and signed her name

---

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.

thereto. This check, drawn on the Mesa National Bank, was then used to establish an account in defendant's own name at the First National Bank of Glenwood Springs. Subsequently, the defendant cashed two checks, one for $20 at a department store and another for $100 directly with the First National Bank.

This formed the basis of the charge that the defendant, by deception, deprived the First National Bank of its property in violation of 1967 Perm. Supp., C.R.S. 1963, 40-5-2(1)(b).

Defendant has divided his assignments of error between those pertaining to his insanity trial, and those concerning the trial on the merits.

## I.

In the first area dealing with the insanity issue, the People have confessed error and we may deal with this in a summary manner. Basically, the error concerns the instruction to the jury that the People have the burden of proving the defendant sane by a preponderance of the evidence. The People have conceded that the jury was misinstructed on this point, since the burden is on the People to prove the defendant sane beyond any reasonable doubt, not by mere preponderance of the evidence. *People v. The District Court,* 165 Colo. 253, 439 P.2d 741. Therefore, it will be necessary to have a new trial on the issue of defendant's sanity.

However, defendant maintains that the entire decision should be reversed, and a new trial held on the merits as well. He argues that the error in the insanity trial permeates the entire cause, including the trial on the merits. We find little substance to this argument, for in Colorado there are two separate and distinct trials, utilizing two separate and distinct juries, whenever the plea of not guilty by reason of insanity is raised. C.R.S. 1963, 39-8-3.

If the jury on the retrial should come to the conclusion that the defendant is insane, then commitment to the state hospital at Pueblo would be required. C.R.S. 1963,

39-8-4. However, if a verdict of sanity would again be returned by the jury, then he would be in the precise position that he was in, in this case, facing a trial on the actual merits of the charge. Consequently, as the error committed in the insanity proceedings could not affect the proceeding on the merits, no justification would exist for reversal and retrial of both.

II.

Defendant's claims dealing with this second insanity trial are moot, since a new trial on the issue of his sanity has been ordered.

III.

■ As his first assignment of error to the merits, defendant urges that the trial court erred when it allowed the witness, Mary Jean Jury, to testify in view of a claimed common-law marriage existing between the defendant and this witness, thereby raising the defense of privileged testimony. C.R.S. 1963, 154-1-7.

An *in camera* hearing was held out of the presence of the jury as to whether defendant could invoke the claim of privilege so as to prevent Mary Jean Jury from testifying. Testimony was presented which supports the trial court's ruling that there was no marriage between these parties, and consequently, no privilege could be claimed. This factual finding by the trial court supported by competent evidence is binding upon us.

IV.

■■ Defendant objected to the admission into evidence of the statements made by him to a part-time jailor. These statements were to the effect that on certain occasions while the jailor was engaged in conversation with other prisoners or otherwise preoccupied, the defendant stated to the jailor that he would be willing to plead guilty to a misdemeanor, or plead guilty if he were guaranteed a sentence not in excess of three years. Pointing to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the defendant contends that

nò warning was given to him of his right to remain silent or to counsel, and that therefore, such statements are improperly admitted into evidence. The *Miranda* warning is required only in those instances where there is investigatory activity being directed against the defendant by state agents. The reasoning in *Miranda, supra,* is that compulsion to confess, whether induced physically or mentally, vitiates any confession.

█ Here, the evidence shows that the defendant voluntarily and spontaneously made these statements to the jailor, who at the time, was engaged in an activity wholly unrelated to the defendant. Under these circumstances, if the defendant chooses to make such spontaneous declarations as these, nothing is present to bar the People from presenting them to a jury for their consideration. *Goddard v. People,* 172 Colo. 498, 474 P.2d 210; *Washington v. People,* 169 Colo. 323, 455 P.2d 656.

## V.

Defendant also contends that the admission of the People's exhibits A, B, C and D was error. Briefly, exhibit A was the check of the witness Mary Jean Jury on her account in Mesa National Bank, made payable to the defendant in the amount of $300, which was used to open the defendant's account at the First National Bank. Exhibit B was a check executed by Mary Jean Jury ostensibly on a joint account with the defendant. Exhibit C was a countercheck for $20 made payable to a department store with the signature of the defendant on it. Exhibit D was a check for $100 drawn from the defendant's account directly on the First National Bank, with the signature of the defendant on it. Defendant argues that no foundation was laid for the admission of this evidence, and that they were not sufficiently identified as to him.

Taking each exhibit in turn, we first note that Exhibit A, the check used to start the defendant's bogus account at the First National Bank of Glenwood Springs, had printed thereon the name and address of the witness,

Mary Jean Jury. It was made payable to the defendant, and bore the signature "Mary Jean Jury." However, this witness after identifying the check as being one of hers, testified that the signature was not hers but that she recognized it as being in the defendant's handwriting. In itself, this evidence is sufficient to show a connection between the defendant and the check, for if the witness is believed as to her statements on the handwriting, then the permissible inference to be drawn is that the defendant forged her signature to this check.

Similarly, exhibits C and D, which are respectively, the $20 countercheck cashed at the department store and the $100 check cashed at the bank, were sufficiently identified by camparison between the signatures on these checks and the signature on the deposit card (exhibit E), which was admitted as bearing the authentic signature of the defendant.

The quarrel defendant has with these three exhibits primarily concerns the identification of them as being written by him. However, under our statutes, it is not necessary that an expert testify as to the authenticity of the writing. If there is a genuine writing such as exhibit E, which may be used to compare the handwriting of the disputed handwritings, exhibits A, C and D, then such disputed writings are admissible into evidence. C.R.S. 1963, 52-1-4. The testimony by the witness identifying the handwriting on exhibit A is sufficient to permit it to be introduced into evidence.

Exhibit B differs from the other three exhibits because it was not signed by the defendant, but was signed by the witness Mary Jean Jury under the name of "Mary Jean Lewis." It was her testimony that she signed this check in this manner and attempted to cash it on the account at the First National Bank at the request of the defendant. She further stated that she did not realize that the account was false, or that it had been started by a check originally drawn on her account by the defendant. The sole reason for the admis-

sion of this exhibit, was to show a common purpose or scheme used to deprive the bank of its funds. The check was not, in fact, cashed by the bank because the bank, at the time the check (exhibit B) was presented, had learned that the original check used to open the defendant's account was false. However, since the check was properly identified and offered for the legitimate and narrow purpose of indicating the common plan of deception, it was not error to admit the exhibit into evidence.

## VI.

We turn next to defendant's argument that no theft was committed. His theory is that the bank was the agent of the defendant for collection only, and the check originally tendered for deposit belonged to the defendant until paid, and that any funds disbursed to him on this check before the Mesa National Bank honored it were voluntarily given to the defendant by the bank. The evidence is clearly indicative of a carefully thought out scheme by which the defendant planned to use a series of bogus checks to obtain moneys belonging to the First National Bank. The first check forged by the defendant and used to open the account was indicative of the intent to deprive the bank of its funds when seen in conjunction with the defendant's next step, the cashing of two checks totaling $120. As a whole, the evidence clearly establishes that the defendant, knowing he had no right to monies in the First National Bank, used a means of deception in order to obtain this money. The argument that somehow no theft was committed because the First National Bank was but an agent of the defendant, fails in view of the fact that the defendant obtained cash owned by the bank, with full knowledge that under no circumstances was he entitled to it. The defendant knew that the initial check was false, he would know that the two subsequent checks cashed were equally false, thus establishing the

necessary elements of the charge. 1967 Perm. Supp., C.R.S. 1963, 40-5-2 (1) (b).

We find that defendant's remaining assignments of error are without merit, and since there would be no precedential value in discussion of them, we decline to further extend this opinion.

Because of the reversible error in the trial of the sanity issue, the jury's verdict which found the defendant sane at the time of the commission of the crime is ordered vacated, and the cause is remanded for a new trial on that issue only. If on retrial of the sanity issue the jury's verdict is not guilty by reason of insanity, the existing verdict of guilty of the substantive charge shall be vacated and the court shall make disposition of this cause as provided by law. Subject to the foregoing instructions, the judgment is affirmed in part, reversed in part, and remanded to the trial court for further proceedings as directed herein.

MR. JUSTICE GROVES not participating.