No. 22725.

JOHN MAJOR YOUNG, JR., A/K/A FRANKIE SAUNDERS *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(438 P.2d 567)

Decided September 13, 1971.　　Opinion modified and as modified
rehearing denied September 27, 1971.

461

464

ROLLIE R. ROGERS, State Public Defender, BRIAN J. MULLETT, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT L. HOECKER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

JOHN MAJOR YOUNG, JR., also known as Frankie Saunders, was convicted in the District Court of El Paso County of first-degree murder and sentenced to death.

The homicide arose out of an attempted robbery of a filling station in Colorado Springs, perpetrated by Young and two confederates, Nathan Whitmore and Joseph Weldon Mitchell. Each was charged in separate informations with first-degree murder.

Mitchell was convicted in a separate trial and sentenced to life imprisonment. His conviction was affirmed in *Mitchell v. People,* 173 Colo. 217, 476 P.2d 1000. The summary of facts as reported in that case reflects the evidence presented concerning the criminal transaction and need not be repeated here.

As in *Mitchell,* Whitmore again was a witness for the People. He testified here essentially to the same matters and to the incriminating statement made by Mitchell to him within seconds of the homicide: "I asked [Mitchell] what happened and he told me that Frankie [Young] had shot a man."

We observe, as shown by the record, that Whitmore never came to trial on the murder charge. The court, upon motion of the district attorney, entered an order of *nolle prosequi.* Whitmore was permitted to plead *nolo contendere* to an unrelated misdemeanor charge and was sentenced to a jail term of two years. We are not here concerned with the disposition of Whitmore's case but only with the validity of Young's conviction.

Young entered a not guilty plea and not guilty by reason of insanity at the time of the alleged commission of the offense. He was tried first on the insanity issue. The jury found Young to be sane. He was thereafter tried on the merits and the jury returned its verdict of guilty, fixing the penalty at death.

## I.

### *THE INSANITY TRIAL*

 Young contends the court committed error in instructing the jury that the burden of proof was upon the People to prove sanity by a mere preponderance of the evidence, whereas the true burden in criminal cases required proof of sanity beyond a reasonable doubt. The attorney general confesses error in this regard and we agree. The trial court was following the dictates of 1965 Perm. Supp., C.R.S. 1963, 39-8-1(3) and did not have the benefit of the holding of this Court in *People v. District Court,* 165 Colo. 253, 439 P.2d 741, in which the statute was declared unconstitutional. The verdict of sanity having been rendered upon an incorrect instruction concerning the burden of proof must be set aside and a new sanity trial held.

 Young contends that the entire case should be reversed because of the insanity trial error. This has been answered in *Lewis v. People,* 174 Colo. 334, 483 P.2d 949. We there ruled that when a separate sanity trial has been held, which results in an erroneous verdict requiring a new sanity trial, it is not necessary to also grant a new trial on the merits where there is no prejudicial error in the trial of the substantive charge.

## II.

### *THE TRIAL ON THE MERITS*

We discuss the following main points relied upon by Young for reversal of the judgment of conviction. We find no prejudicial error and therefore affirm.

1. Young contends the jury was unfairly and illegally weighted in favor of the death penalty. During the selection of the jury, the court sustained the district attorney's challenges for cause as to twenty venirement, each of whom answered the following question in the negative: "Is there any set of circumstances or conceivable set of circumstances under which you could bring back the death penalty?" Young claims the court's ruling

violated the rule announced in *Witherspoon v. State* of *Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. We disagree. In *Witherspoon* the United States Supreme Court stated:

"The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. * * *

"* * * Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

For further analyses of *Witherspoon, supra, see Boulden v. Holman*, 394 U.S. 478, 89A S.Ct. 1138, 22 L.Ed.2d 433; *Maxwell v. Bishop*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221.

 Here, the transcript of the record of the voir dire examination reflects that no challenges for cause were sustained simply because the venireman had a general objection to or conscientious or religious scruple against the death penalty. Each of the twenty was excused for cause because of his unqualified declaration that under no circumstances could he impose the death sentence. In such circumstances, the juror could not perform his duty to consider whether a defendant who was found guilty of murder in the first degree should be punished by death or by life imprisonment. We do not consider *Witherspoon, supra,* to be inconsistent with the law of

this state as first announced in *Gallegos v. People,* 116 Colo. 129, 179 P.2d 272, and reaffirmed in *Padilla v. People,* 171 Colo. 521, 470 P.2d 846. A venireman who unqualifiedly announces that if selected to serve on a jury he cannot or will not perform his lawful duty as a juror is properly challenged for cause.

It cannot fairly be said in this case that the jury was a "tribunal organized to return a verdict of death" the proscription of which was spelled out in *Witherspoon, supra.*

2. Witness Charles Ballard testified for the People to statements volunteered to him by Young during the early morning hours following the murder. Young was living in the Ballard residence at that time, and when he returned to the Ballard home between 3 and 4 in the morning he awakened Ballard and talked with him. He told Ballard that he had tried to pull a robbery, that he had some difficulty, and that he had shot a man. During the district attorney's examination of this witness, the witness repeated the statement — "He said he shot a man" — a total of seven times. The defendant objected twice to the repetitious nature of the answers. He argues that the district attorney designed his questioning so that Ballard would repeat the incriminating admission as he did. The record does not indicate such a purpose. It is apparent that the witness was nervous, inexperienced, and having trouble responding to the questions asked by the district attorney who was attempting to bring out the entire conversation during which the admission was made. We find no abuse by the trial court in its rulings on this matter, nor can we say that the jury was unfairly prejudiced against Young as a result of this testimony.

3. It is next contended that prejudicial error was committed in admitting into evidence Young's statement to the police in which he confessed his participation in the killing. The principal argument is that Young did not have the mental capacity to make a voluntary confession

and that it was obtained in violation of his constitutional rights and was therefore inadmissible.

■■ Young's trial commenced June 6, 1966. He seriously contends that although this was prior to the decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, which was announced June 13, 1966, the principles of *Miranda* should have been made applicable to his case. Young's statement was given on September 14, 1965. It is clear that the principles announced in *Miranda* do not apply retrospectively, *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, and that the determination of admissibility of pre-*Miranda* statements is governed by the traditional voluntariness test of consideration of the "totality of circumstances." *Jordan v. People*, 161 Colo. 54, 419 P.2d 656; *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; *Boulden v. Holman*, 394 U.S. 478, 89A S.Ct. 1138, 22 L.Ed.2d 433.

The court conducted an *in camera* hearing prior to admitting the confession into evidence as required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205. The record shows that Young was arrested on September 7, 1965, in Topeka, Kansas, on suspicion of burglary. The next day, before he was questioned, he was warned by the Kansas authorities of his right to an attorney, of his right to remain silent, and that anything he said could be used against him in court. The initial interrogation lasted one-half hour. He was again interrogated on the same day about the burglary and was similarly advised of his rights. On September 9, he was formally charged with burglary in the Kansas court. On September 13, Colorado Springs police officers arrived in Topeka and they also advised defendant of his rights, interviewing him for a period of approximately forty-five minutes. The murder charge was not mentioned to him during this interview. Later that evening he was again interviewed, after having been first advised of his rights. He consented to proceed with this interview

without the presence of an attorney. He was then advised that murder charges were pending against him in Colorado. This conversation lasted approximately forty-five minutes. The officers told him they were returning to Colorado the next day and they asked him if he desired to talk with them again before their departure. He indicated that he would talk with them the next morning. They returned the following morning and again advised Young of his rights. At this time he was interviewed for approximately one hour and fifteen minutes. Then came a fifteen-minute break during which he was provided with refreshments. After this, he was interrogated by a Kansas police officer for about an hour. Young indicated he would like to make a statement to the Colorado officers. He was taken to another room, where he was again warned of his right to have an attorney present, his right to remain silent, and that anything he said could be used against him in court. Young then confessed to his participation in the murder. The confession was stenographically recorded and transcribed.

In addition to the testimony of the police officers and the stenographer, the court had the benefit of the opinion of two psychiatrists concerning defendant's mental condition, as well as the defendant's testimony at the *in camera* hearing. The court found that there was no lack of mental capacity to impair his understanding of the proceedings, that defendant had waived his right to counsel, and that his statement was voluntary and should be submitted to the jury. It was submitted to the jury under proper instructions concerning voluntariness. The court's findings will not be set aside on review where they are amply supported by competent evidence, as is the case here.

We note additionally that there is nowhere in the record the slightest intimation of any mistreatment of the defendant or any improper conduct or coercion on the part of the Kansas or Colorado police, and Young

makes no claim in this regard. The confession was properly admitted into evidence.

4. Young argues that it was prejudicial error for the court to permit Nathan Whitmore to testify over his vigorous objection to the statement made by Mitchell that Young shot Berg [the victim]. Whitmore testified that Mitchell, Young and Berg were in the back room of the filling station when he heard a shot. Whitmore then commenced walking from the premises when Mitchell and Young hurriedly caught up with him. Whitmore was allowed to testify that Mitchell stated to him that Young had shot Berg. No longer than thirty seconds had elapsed from the time of the shot until this remark was made.

Before the statement was admitted into evidence, an *in camera* hearing was held at which an offer of proof was made and arguments of law presented. The court then determined the statement to be admissible as a part of the *res gestae,* in the nature of an exclamation rather than an explanation of what had happened. The trial judge determined the statement was so related to the principal fact — the killing — in time and place that it was spontaneous and exclamatory in nature, and not the product of cool reflection and deliberation. That it was in answer to a question was merely a factor to be considered in determining whether it was spontaneous or contrived. *C. McCormick, Law of Evidence* §272. The author states:

"The test to be applied by the judge is: was the declaration spontaneous, excited or impulsive, or was it the product of reflection and deliberation? This attempt to reconstruct the state of another man's mind and emotions as of a moment in the past is so complex and individualized a judgment that the trial judge must be given considerable lee-way of decision."

Consistent with the foregoing, the Court had held that whether specific acts are admissible as a part of the *res gestae* is a matter within the sound discretion of the trial

court, the determination of which is ordinarily conclusive on appeal in the absence of a clear abuse of discretion. *Dolan v. People,* 168 Colo. 19, 449 P.2d 828; *Abeyta v. City and County of Denver,* 132 Colo. 472, 289 P.2d 918; *Stahl v. Cooper,* 117 Colo. 468, 190 P.2d 891. We find no abuse of discretion in the admission of Mitchell's statement as related by Whitmore.

5. Young claims his Fifth Amendment right against self-incrimination was violated by improper remarks made by the district attorney during closing argument. Young testified briefly during the trial.

Part of the defense strategy was to attack the voluntariness of the confession which had been admitted in evidence. Young argues that he took the stand for a limited purpose only, namely, that of presenting evidence bearing only upon the issue of voluntariness of the confession. In spite of this limitation, the district attorney made remarks to the jury in closing argument concerning Young's failure to deny Nathan Whitmore's testimony concerning the shooting.

Preliminary to presenting the defendant's case, his counsel requested permission to make a brief *second* opening statement:

"MR. MULLETT: I realize I have already made an opening statement. At that time I didn't know whether the Court would permit People's Exhibit 'S' to go to the jury. I would like the Court's permission at this time to make a very brief statement so that the jury will have a better comprehension of some of the testimony I will offer.

"MR. RUSSEL: That is objected to, Your Honor.

"The COURT: The Court is going to allow Defense Counsel to make a very brief opening in addition to his opening statement at this time.

"MR. RUSSEL: Very well.

"MR. MULLETT: Ladies and gentlemen of the jury, the Court Reporter from Topeka has read you a statement that was given by this defendant last fall in Topeka. When the Court instructs you on the law applicable in

this case it will give you an instruction that will say in general that after hearing all of the facts you will consider the evidence and decide whether or not this statement was the free and voluntary statement of the witness, and that if it was not a free and voluntary statement of the witness, that it was coerced in any way, or not completely his own voluntary act, or if he didn't understand his rights, or things to that effect, that you are to disregard the statement during your deliberations, *so some of the testimony I will be offered* [sic] *is for that purpose* and I hope you will keep that in mind as you hear the testimony. Thank you." [Emphasis added.]

Defense counsel then presented, among other witnesses, the following, whose testimony related to voluntariness: a psychiatrist, concerning his opinion of defendant's mental condition and understanding at the time of giving the statement; the two arresting police officers, concerning the circumstances surrounding the taking of Young's statement; and the defendant, Young.

The examination of Young was limited to three questions: was he the defendant; did he remember being arrested in Topeka, Kansas; and had he ever had an attorney help him prior to the time of his arrest in Topeka. The first two questions he answered in the affirmative and the last in the negative. The district attorney attempted to enlarge the area of inquiry on cross-examination but was prohibited by the court on defendant's objection.

Young argues he did not intend to waive his privilege against self-incrimination when he took the stand; that he was entitled to be a witness for the limited purpose only of attacking the voluntariness of the confession; and that when the district attorney commented on his failure to deny Whitmore's testimony, this was "unfair comment" in violation of his Fifth Amendment privilege against self-incrimination. Young further argues that the court recognized the limited purpose for which he took the stand when it restricted cross-examination. In each in-

stance where the district attorney was restricted in cross-examination, it was because the cross-examination exceeded the bounds of direct examination.

Our search of the record fails to reveal any ruling by the court that permitted defendant to take the stand for a limited purpose only, as he now contends. We do not construe the court's permission to defense counsel to make a second and additional opening statement as amounting to consent and we find no comment by the court in the record from which such consent could be implied. It cannot reasonably be said from the record that defendant was misled into believing he had the consent of the court to so limit his testimony or that he was unfairly trapped into waiving his protection against comments by the district attorney upon his failure to explain the evidence against him. In *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, Justice Douglas, speaking for the Court, stated:

"* * * As stated by this Court in *Caminetti v. United States,* 242 U.S. 470, 494, an accused who takes the stand 'may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it.' But where the claim of privilege is asserted and *unqualifiedly granted,* the requirements of fair trial may preclude any comment. * * * The fact that the privilege is mistakenly granted is immaterial." [Emphasis added.]

This Court has never been presented with the problem of whether there may be a limited waiver of the right against self-incrimination by which an accused may testify as to collateral matters not bearing on the merits of the accusation against him. The doctrine of limited waiver has been considered in numerous federal decisions. *Johnson v. United States, supra; Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed.2d 442; *Calloway v. Wainwright,* 409 F.2d 59 (5th Cir.), *cert.*

*denied*, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222; *Dyson v. United States*, 283 F.2d 636 (9th Cir.); *Grantello v. United States*, 3 F.2d 117 (8th Cir.). Briefly stated, the rule of limited waiver, where followed, allows a defendant who has permission of the court to be a witness on his own behalf for the limited purpose of testifying to so-called collateral matters that do not bear upon the issue of guilt or innocence, without foregoing the protection afforded him against unfair comment by the district attorney upon his failure to testify to or explain matters concerning the merits of the case.

Under the facts of this case, we need not decide to what extent, if any, the doctrine may be applicable in Colorado. The record does not support Young's contention that the trial court ruled that he could take the stand for the limited purpose of voluntariness, even though that may have been his intended purpose. The defendant here is in the position of having voluntarily taken the stand for all purposes and in doing so he waived his constitutional privilege against self-incrimination and the protection afforded him from comments by the district attorney as to his failure to deny or explain the incriminating facts already in evidence. We find no error in the court's rulings in this regard.

6. Young contends the court committed prejudicial error in admitting into evidence People's Exhibit A, a photograph of the victim, showing the mortal wound inflicted on his head. It is argued that the victim's body had been rolled over from a facedown position to a faceup position; and that the photograph did not therefore depict the crime scene as it actually existed, had no evidentiary value, and was inflammatory only. The testimony indicated that the victim had been rolled over to determine if he was still alive and that the photograph accurately depicted the position of his body after it had been rolled over.

It is well-established that photographs may be used to graphically portray, among other things, the

scene of a crime, the identification of a victim, the appearance and condition of the deceased, and the location, nature and extent of the wounds or injuries, all of which matters are relevant. It has been consistently held that photographs are competent evidence of any relevant matter which it is competent for a witness to describe in words. *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *Monge v. People,* 158 Colo. 224, 406 P.2d 674; *People v. Spinnuzi,* 149 Colo. 391, 369 P.2d 427. That shocking details of the crime may be revealed by photographs does not render them inadmissible if otherwise relevant. *Hampton, supra; Hinton v. People,* 169 Colo. 545, 458 P.2d 611; *Spinnuzi, supra.* We find no merit in the defendant's argument.

7. Young concludes his argument by requesting that we notice, in addition to those errors especially argued by him, some twenty-eight additional errors set forth in his motion for new trial. We are reminded of the caveat of Mr. Justice Frankfurter in his concurring opinion in *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704:

"In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution."

We shall not seek out errors which did not merit consideration in defendant in error's brief.

8. One last matter needs comment. Counsel for Young pleads eloquently for reversal of Young's conviction because of the disparity in treatment accorded Young and his two accomplices, Nathan Whitmore and Joseph Weldon Mitchell, and the disposition of their respective cases. Young and Mitchell were tried separately and each convicted by different juries. Mitchell was sentenced to life in prison. Young was sentenced

to death. Whitmore was never tried and the case against him was dismissed. The argument is that each was guilty of felony murder in the first degree. Each should have been accorded similar treatment and given similar sentences.

This common sense humanitarian argument for equal justice, appealing as it may be, overlooks the limited authority of this Court, which has no present power to change sentences lawfully imposed by judicial tribunals acting within their statutory authority. The sentences imposed were within the exclusive province of the respective jury in each case. We shall not speculate as to why one jury imposed the death penalty and the other jury imposed only a life sentence.

 We observe that John Major Young, Jr. was represented by able counsel and was given a fair trial, conducted without substantial error, in accordance with requirements of procedural and substantive due process.

The judgment of conviction on the merits is affirmed.

Because of the reversible error in the trial of the sanity issue, the jury's verdict which found the defendant sane at the time of the commission of the crime is ordered vacated, and the cause is remanded for a new trial on the sanity issue only. If on retrial of the sanity issue the jury's verdict is not guilty by reason of insanity, the existing verdict of guilty of the substantive charge shall be vacated and the court shall make disposition of this cause as provided by law. Subject to the foregoing direction, the judgment is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consonant with the views expressed herein.

MR. JUSTICE GROVES specially concurring:

I concur in the opinion, but wish to make a statement concerning two possible inferences which might be drawn from that portion of the opinion under point 5 — alleged improper remarks made by the district attorney during

closing argument.

The determination in this respect could have been predicated merely upon the failure of defendant's counsel to give any indication in advance of the testimony of the defendant that he wished that testimony to be for a limited purpose. An inference might be drawn from the opinion that, if the defendant may take the stand for a limited purpose, the court's permission must first be obtained. Such a conclusion may or may not be sound. It is conceivable that we might rule someday that a defendant has a constitutional right in this respect. *See Calloway v. Wainwright*, 409 F.2d 59 (1968), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222, (1969). At the moment I lean the other way, but I think we should leave the door open in this connection.

The second possible inference is that, if a defendant is permitted to take the stand for a limited purpose, his testimony must be only as to collateral matters not bearing on the merits of the accusation against him. The question of voluntariness of a confession is submitted to a jury as one of the elements to be considered by it in reaching a verdict of "guilty" or "not guilty." I am inclined to think that the testimony as to voluntariness, when presented in the trial itself before the jury, may not be a collateral matter. However, it is conceivable that sometime we might rule that the defendant may take the stand to testify only as to voluntariness of confession, irrespective of whether this is a collateral matter, under the following reasoning: In the *in camera* hearing required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the defendant is permitted to testify on the limited subject. *Downey v. People*, 121 Colo. 307, 215 P.2d 892 (1950). Someday we might rule that, simply because the defendant can testify solely as to voluntariness at the *in camera* hearing, he has the same right before the jury. Again, it is not intimated that we shall so hold, but the avenue toward this ruling should not be closed at this time.