**Frederick Keith CALLOWAY, Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, Appellee.**

**No. 25284.**

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1968.

As Amended on Rehearing and
Rehearing En Banc Denied
Feb. 19, 1969.

Certiorari Denied May 19, 1969.
See 89 S.Ct. 1752.

---

J. Leonard Fleet, Hollywood, Fla., for appellant.

Earl Faircloth, Atty. Gen., Tallahassee, Fla., Charles W. Musgrove, Asst. Atty. Gen., Vero Beach, Fla., for appellee.

Before BROWN, Chief Judge, *CLAYTON, Circuit Judge, and SCOTT, District Judge.

SCOTT, District Judge:

Appellant, who was sentenced to death in the electric chair on January 15, 1965, for murder in the first degree, seeks habeas relief from that conviction and sentence. After conviction in Broward County, Florida, upon a jury verdict, appellant sought relief in the Circuit Court by motion for a new trial, by direct appeal to the Supreme Court of Florida and by petition for rehearing in the latter Court, all of which were denied. He then filed his petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. The District Judge, on the basis of the record before the Court and a written stipulation from the pre-trial hearing, denied the relief sought. Both points raised on appeal have been argued in the Supreme Court of Florida by appeal or on petition for rehearing.

Appellant alleges two grounds of error for our consideration: First, that his conviction is constitutionally void because his repeated requests for the assistance of counsel prior to his confession were denied and his incriminating statement and all the evidence thereby obtained were admitted against him at his trial contrary to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution; second, that the prosecutor commented to the jury about his failure to testify on matters other than the voluntariness of his confession contrary to the Fifth and Fourteenth Amendments.

I.

The first assignment of error raises the question whether, considering the totality of the circumstances from an independent examination of the whole record the appellant's statements were voluntary. Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968).

■ Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938).

■ Invariably, as the Supreme Court has pointed out, in cases involving confessions obtained through unobserved police interrogation, there is a conflict in the testimony as to the events surrounding the confessions. This case presents no exception. To resolve this evidentiary conflict a credibility determination must be made. Considering the undisputed facts, together with reasonable inferences from the testimony as set forth below, we are led to the inescapable conclusion that appellant's confession was not involuntary as a matter of law.

On September 30, 1964, Detectives Frank Troy and Richard Bryan, with other members of the Broward County Sheriff's office, went to the appellant's home for the purpose of arresting him and charging him with first degree murder in the slaying of Carl Ludwig, Jr. The intended arrest was to be made with the cooperation of Ruth Calloway, whom the appellant had identified as his wife. Troy and Bryan stationed themselves inside appellant's home to await his arrival, and other law enforcement officers were placed so that the accused would be under constant observation.

* Judge Clayton heard oral argument but on account of illness was unable to participate in the consideration or decision of this case.

When appellant opened the front door of his home, according to Troy, he was immediately placed under arrest and told that anything he said "at this time could be used either for or against him". According to Troy, on this occasion and on at least five other occasions prior to the time when appellant made any incriminating statements, he requested the opportunity to consult with counsel. Troy testified that appellant said he would not talk until he saw his lawyer. Appellant testified that he immediately asked for an attorney and that Troy told him "you have plenty of time for a lawyer".

Appellant was taken to the scene of the crime immediately after his arrest where he again requested an attorney. Detective Troy testified that not until appellant arrived at the Sheriff's office, located in the Broward County Court House, was he given the opportunity to contact an attorney. Appellant was placed in the interrogation room where he was told that he could make a telephone call. In the room with appellant was a telephone and a telephone directory. According to the testimony of Troy and Bryan appellant was left alone in the room for four or five minutes; this event is denied by appellant. Troy testified that when appellant was told that he could use the telephone he indicated by a shrug of his shoulders that he did not want to make a call and said that he would like to give a statement.

Shortly after the interrogation began appellant broke down and confessed. After the confession had been made orally appellant repeated the statement in the presence of other members of the Sheriff's office for the benefit of the typist who made a written record which was later signed by appellant and introduced at his trial as evidence for the State.

■■ Appellant's trial began on January 11, 1965. This was after the Supreme Court had decided Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and before that Court decided Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964). The retroactive application of these two decisions are limited to trials begun after their respective dates of decision. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Accordingly, the requirements of *Escobedo*, but not *Miranda*, directly apply to the matter *sub judice*. Johnson v. New Jersey, supra. However, the *Miranda* warnings are relevant to the issue of voluntariness, even though they are not directly applicable. Clewis v. Texas, supra; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

■ It is quite clear that under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963), every person accused of a crime, whether State or Federal, is entitled to a lawyer at trial. This right to counsel was broadened under *Escobedo* to include the "in custody" period. In *Escobedo* the Supreme Court held that the rights described therein inured to the benefit of the accused when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect * * *." *Escobedo*, supra, 378 U.S. at 490, 84 S.Ct. at 1765. Appellee argues that the appellant was not entitled to the rights under *Escobedo*. Clearly after appellant had been arrested and before confessing he was "in custody" and, therefore, entitled to the right to counsel under *Escobedo*. The process had turned from "investigatory to accusatory". See *Miranda*, supra, n. 4.

■ Under *Escobedo* the accused is denied assistance of counsel in violation of the Sixth Amendment when he is in custody, has requested and been denied an opportunity to consult with his lawyer and has not effectively been warned of his absolute constitutional right to remain silent. Appellant makes no challenge here to the adequacy of the warnings given him of his right to remain silent, though on the stand he denied

that the warnings were given to him. Crediting the testimony of the detectives, as did the District Court, there is no doubt that appellant was told that he had a right to remain silent.[1] Since it is undisputed that appellant indicated at least several times that he was not going to say anything until he had talked to his lawyer, the question becomes whether appellant was afforded the opportunity to consult with a lawyer.

Appellant testified that at the time of his arrest he knew a lawyer and was paying him to obtain a divorce from the woman with whom he was living. He eventually called this very lawyer to aid in his defense. Though appellant was not given the opportunity to contact a lawyer until he arrived at the Broward County Sheriff's office, before appellant made any statements and again during interrogation he was repeatedly advised that he had a right to have an attorney. Apparently appellant changed his mind about obtaining counsel and shrugged his shoulders when he was advised that he could use a telephone located in the interrogation room.

■ This opportunity to contact a lawyer, limited as it was, together with the several warnings of his constitutional rights, was sufficient basis for the District Court's findings that appellant was not denied the assistance of counsel under *Escobedo* and the Fifth, Sixth and Fourteenth Amendments. Appellant had a fair opportunity to secure counsel of his own choosing within the guaranty of due process of the United States Constitution. Cf. Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958).

■ The inference is inescapable that appellant was ready and willing to confess of his own volition without first obtaining a lawyer. This Court will not substitute its own view on a close factual question for that of the State Court. Compare Mr. Justice Harlan's separate opinion in Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968). We conclude that we cannot hold as a matter of law that there are sufficient facts which render the confession involuntary.

II.

■ The second assigned error raises the question whether the prosecutor's comments to the jury concerning appel-

---

1. As to the warnings given the appellant immediately following his arrest, Deputy Sheriff Pinter testified as follows:

Q In your presence was the accused told that he didn't have to say a thing?
A Yes, sir; he was told that several times.
Q By whom?
A Deputy Troy, I believe, by Deputy Clode.
Q Before or after the accused had made the first statement to Deputy Troy?
A Before.
Q How did you know?
A Well, I heard Deputy Troy tell him.
* * *
Q Will you repeat for me the words used by Detective Troy?
A I really couldn't give it verbatim, but in effect he advised the defendant that he was under arrest for murder and he said, "At this time I want to advise you of your constitutional rights. If you want to make certain statements, anything you do say may be used for or against you in a court of law", something to that effect. * * *
Q Is that the time, too, Officer Troy advised Mr. Calloway of his constitutional rights which you have enumerated previously?
A Yes, sir.
Q That he had the right of having an attorney, counsel, anything he said might be used for or against him in court of jurisdiction or court of law in a subsequent hearing?
A Yes, sir.
Q Both of these things were said to him?
A Yes, sir.
Detective Troy testified:
Q Did you first advise him of his constitutional rights?
A Yes, sir. I advised him any statement he made at that time could be used for or against him in a court of law. I advised him he need not make any statement without first seeking advice of counsel * * *.

lant's failure to testify on anything other than the voluntariness of his confession violated the Fifth and Fourteenth Amendments to the United States Constitution. It is axiomatic that the Fifth Amendment is applicable to State prosecutions by the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

In the Circuit Court of Broward County, Florida, the Judge found that the confession was given voluntarily and that it was, therefore, admissible in evidence. Calloway v. State, 189 So.2d 617 (Fla. 1966). The trial Judge would not let appellant relate to the jury his side of the story regarding the confession unless he took the stand during his case in chief. Appellant, therefore, elected to take the stand during the trial for the limited purpose of repudiating the voluntariness of his confession. Before taking the stand appellant's attorney announced to the Court that appellant was testifying only as to the manner in which the confession was obtained. During the course of his testimony appellant stated at least three times "I didn't do it".[2] When the prosecutor on cross-examination consistently sought to inquire of the appellant as to other matters the Circuit Judge sustained all objections thereto, apparently reasoning that appellant's "denial" before the jury had not violated the "limited purpose" for which appellant took the stand. When the State's Attorney gave his closing argument to the jury, he repeatedly commented upon the failure of the accused to testify on other issues.[3] Objection to such comment was made by counsel for the defense. However, the Court *overruled* this objection and appellant contends that this ruling was reversible error.

Appellant was entitled under Florida law to have testimony concerning

---

2. Upon direct questioning by his attorney, appellant related the conversation he had had with Detective Troy in the Broward County Court House on September 30, 1964, and the circumstances surrounding his confession. Appellant testified, in part, as follows:

    A * * * He [Troy] said, "Why don't you quit beating around the bush with me and tell me just what happened, just show me what you did. I said, "Detective Troy, I didn't do it. I know also for a crime of this type a person can be sentenced to the electric chair". I told him, "I may be stupid, but I am not ignorant. I am not that stupid". He said, "Well, look, if you tell me exactly how it was done, and if you tell me this I can promise you you will not get the electric chair". I said, "I didn't do it. I can't tell you I did it, I didn't do it". * * *

3. In his closing argument for the State, the prosecutor made the following statements to the jury:

    Mr. Long: * * * [the defendant] said several times, as you gentlemen will recall, "I want to know where Ruth and Rickey are". Keep in mind, gentlemen, that this is the same Ruth that he wouldn't tell the truth to[.] He didn't tell the truth then and never did tell the truth, and this is the same Ruth that he told he would kill Rickey, but the impression he wanted to make on you was the only interest he had was his girl, Ruth, and this same little boy that he told the mother, "I will kill him." Uncontradicted, he never once went back on September 30th. What happened the night of September 25th, objection sustained, it wasn't brought out on direct. The morning the 26th, the same thing, afternoon of the 26th, the same thing, and never once did he make a statement about what happened before September 30th, never once. Why? Because if he had ever gone into that, then we could have asked him where he was on the night of September 25th, we could have asked him, were you at the farm store, we could have asked him everything pertaining to this crime, but it went nicely, it wasn't gone into at all,—the mind of an innocent man?—oh no, the mind of a guilty person. Wants you to know what happened? Of course not! That is the last thing in the world we want to do is try the defendant,—anybody but me because I know I am guilty, says the defendant. Don't try me, because I know I am guilty,—try Troy, try Long, try anybody, but don't try me.

the admissibility of the confession repeated before the jury so that the jury might consider it in determining how much weight should be accorded the confession. *Calloway,* supra, at 619; Graham v. State, 91 So.2d 662 (Fla.1956); Bates v. State, 78 Fla. 672, 84 So. 373 (1919). Part of this testimony was appellant's version of the circumstances and dialogue surrounding the making of the inculpatory statement.

Appellee contends that when appellant testified on his own behalf before the jury, he necessarily waived his constitutional privilege against self-incrimination with respect to his right not to have comment made upon his failure to testify as to other relevant matters in the case. Insofar as this precise point is concerned, it would appear that Florida has not ruled as to whether or not it will follow the law of limited waiver. However, we think that for the State to deny appellant a limited waiver of the "no comment" rule under circumstances presented here would be an infringement of the Fifth Amendment.

It is clear that when a defendant voluntarily testifies to the merits, and not just upon a purely collateral matter, the prosecutor may comment upon the defendant's failure to deny or explain incriminating facts already in evidence. Caminetti v. United States, 242 U.S. 470, 492, 37 S.Ct. 192, 61 L.Ed. 442, 456 (1916); Dyson v. United States, 283 F.2d 636 (9th Cir. 1960); Grantello v. United States, 3 F.2d 117, 121 (8th Cir. 1924); Odom v. State, 109 So.2d 163 (Fla.1959). Where the defendant does not take the stand on his own behalf the prosecutor is not permitted under the Fifth Amendment to comment upon the failure of the accused to so testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965). Cf. § 918.09, Florida Statutes, F.S.A. We think that the determination by the jury of the weight to be given to a con-

fession is a collateral issue and such determination does not directly relate to the issue of guilt. Cf. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247, 1257 (1968). Under these circumstances the prosecutor cannot draw unfavorable inferences from the failure of the accused to testify on the merits of the accusation.

A case closely in point is Dyson v. United States, 283 F.2d 636 (9th Cir. 1960), cert. den. 366 U.S. 974, 81 S.Ct. 1944, 6 L.Ed.2d 1264 (1961), in which the Court held that by calling attention to his denials of guilt, the defendant had in effect waived his privilege against self-incrimination. *Dyson* is predicated upon Diggs v. United States, 220 F. 545, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, and Carminetti v. United States, Id. We think *Diggs* is not applicable here. The appellant testified to a collateral issue and not to the merits of the case as did Diggs.

Appellee also contends and the Court below found that appellant's testimony on the stand went beyond the issue of the voluntariness of his confession because appellant's answers to his attorney's questions on direct examination put before the jury his denial of his guilt of the crime. We do not agree with the District Court and appellee. We think that appellant did not exceed the proper bounds for obtaining a limited waiver. Even though appellant indicated several times that he had denied his guilt to the detectives, he did this only in the context of the alleged colloquy between Detective Troy and appellant which occurred immediately prior to the making of the confession. The assertion of innocence by the appellant was an integral part of his explanation of what occurred when the confession was elicited. Compare Circuit Judge Merill's dissenting opinion in *Dyson,* supra, 283 F.2d at 640. Appellant was not testifying to the issue of his guilt or innocence. We think a distinction should be made between the accused denying his guilt by his own

testimony from the stand and the accused calling attention to his denials of guilt in response to questions posed by his attorneys in relating the circumstances surrounding the making of the confession. If recitation to the jury of an initial denial of guilt to the detectives were to constitute a waiver of the "no comment" rule, then the jury would be denied the opportunity to hear all of the pertinent evidence and would thereby make its decision upon testimony more favorable to the prosecution.

■ That appellant took the stand for the sole purpose of testifying upon the credibility of the voluntariness of his confession should not be taken as a complete waiver of his constitutional privilege against self-incrimination. We find that the trial Court erred in permitting the prosecutor to comment adversely upon appellant's failure to testify on anything other than the voluntariness of his incriminating statements; therefore, we reverse the lower Court's ruling on this issue.

## ON PETITION FOR REHEARING AND REHEARING EN BANC

PER CURIAM:

The denial of the petition for a writ of habeas corpus is reversed as to the judgment and sentence of death, and the case is remanded to the District Court with directions to the District Court to enter such orders as are appropriate to allow the State a reasonable time within which to grant appellant a new trial consistent with the foregoing decision; otherwise, appellant must be discharged.

The petition for rehearing is granted and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure, Local Fifth Circuit Rule 12), petition for rehearing en banc is denied.