Robert McGAHEE, Petitioner-Appellee,

v.

Raymond D. MASSEY, Superintendent, Union Correctional Institution, Respondent-Appellant.

No. 80–5910.

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1982.

Max Rudmann, Robert L. Bogen, Asst. Attys. Gen., West Palm Beach, Fla., for respondent-appellant.

Robert E. Austin, Jr., Leesburg, Fla., for petitioner-appellee.

Before FAY, ANDERSON and CLARK, Circuit Judges.

FAY, Circuit Judge:

A confrontation between the defendant's belatedly asserted fifth amendment right to remain silent and the prosecutor's ability to present fair comment on the evidence sets the legal stage for this appeal. The State of Florida appeals from the grant of a writ of habeas corpus by the Middle District of Florida on October 15, 1980. Having found the defendant to have waived his fifth amendment right by testifying on the merits of his case and having determined no plain error existed, we reverse.

Robert C. McGahee was convicted of rape on April 26, 1974, by a Brevard County jury and was sentenced to a term of six months to thirty years. The defendant appealed his conviction to the Fourth District Court of Appeal, which affirmed per curiam on October 31, 1974.[1] The Florida Supreme Court subsequently denied the defendant's petition for writ of certiorari.[2] Having exhausted his state remedies, the defendant filed a petition for writ of habeas corpus in the Middle District of Florida. He asserted three grounds upon which he sought relief:

(1) the trial court committed fundamental error in admitting testimony of prior incidents of indecent exposure or exhibitionism;

(2) the prosecutor's comment on the defendant's failure to testify prejudiced his right to a fair trial and violated his fifth amendment right; and

(3) the trial court committed fundamental error in denying defendant's motion for a directed judgment of acquittal.

The District Court issued a memorandum opinion granting the defendant's request for habeas corpus relief. In so doing, he relied solely upon the defendant's second ground as a basis for finding constitutional

---

1. *McGahee v. State*, 302 So.2d 835 (Fla. 4th Dist.Ct.App.1974).

2. *McGahee v. State*, 311 So.2d 671 (Fla.1975).

error. We do not presume to blaze the trail by reviewing issues not addressed by the District Court. But here, where the district court found it unnecessary to elicit testimony beyond the written record and that record is now before us in full, we find it in the best interest of judicial economy to review all of the grounds asserted.

*At Trial*

The evidence introduced at trial included testimony from the prosecutrix concerning the sequence of events of October 11, 1973, the date of the rape. She testified that while sunbathing at Satellite Beach, she was approached by the defendant wearing a white see-through bikini bathing suit. He grabbed at her pants, made a suggestive remark, and then pushed her back into a sand dune where he raped her.

In addition to this testimony, the prosecution called police officers, the victim's mother, the examining physician and an additional identification witness, Kathie Hayes. Kathie Hayes testified that she had seen the defendant on two prior occasions, September 18 and 19, 1973, while she and her girlfriends were at the beach. On both days the defendant had worn a red see-through bikini bathing suit, he had walked towards them and exposed himself.

The prosecution proffered this testimony to the trial judge outside the presence of the jury in order to show the defendant's "manner of operation." Defense counsel lodged an immediate objection. The trial judge overruled the objection relying on *Williams v. State*, 110 So.2d 654 (Fla.1959).[3]

Upon completion of Kathie Hayes' testimony, the prosecution rested its case. De-

fense counsel moved for a directed verdict of acquittal, which the judge denied. In the discussion which transpired during the subsequent charge conference, the judge asked if the defendant would be called upon to testify, and if not, whether defense counsel wanted "the charge" read. Defense counsel responded that he was unsure, but he would tell the judge of his decision in the morning.

The following morning the defendant testified as to his whereabouts on September 18th, the first day Kathie Hayes had seen him on the beach. He did not testify about the events of September 19th, nor of October 11th, the date of the rape. He attempted to prove he had been in Jacksonville on the 18th in order to impeach the credibility of Kathie Hayes. The trial judge strictly limited cross examination to questions concerning September 18th.

Objections entered by defense counsel during cross examination, however, alleged only that the questions were beyond the scope of direct examination. Not once did defense counsel object to cross examination by asserting the defendant's fifth amendment protection against self-incrimination.[4] The defense rested at the conclusion of the defendant's testimony.

Prior to closing argument, the prosecutor approached the bench. The following colloquy took place:

Mr. Johnston: Your Honor, I have rebuttal about the day in question, and I want to approach this issue. Don't want reversible error. My intention, unless the Court wants, the Defendant has taken

---

3. In addition, the court cited the following authority: *Griffin v. State*, 124 So.2d 38 (Fla. 1st Dist.Ct.App.1960); *Mims v. State*, 241 So.2d 715 (Fla. 1st Dist.Ct.App.1970); *Hines v. State*, 243 So.2d 434 (Fla.2d Dist.Ct.App.1971); *Fivecoat v. State*, 244 So.2d 188 (Fla.2d Dist.Ct. App.1971); *Coney Island v. State*, 193 So.2d 57 (Fla.3d Dist.Ct.App.1966); *Wingate v. State*, 232 So.2d 44 (Fla.3d Dist.Ct.App.1970).

4. "Q: Did you hear the officer testify yesterday that he found you in Room 204 of Howard Johnson's?
Mr. Barket: Your Honor, at this time I would object. We are now getting into testimony

by the officer, that had to do with the times that go beyond direct examination."
Trial Transcript at 220. (The trial transcript referenced within this opinion is that of the state court trial. It will hereinafter be referred to as T. Tr.)
"Q: And what were the approximate dates of those times?
Mr. Barket: Your Honor, I just still contend he is going beyond the scope of direct examination.
The Court: I ruled on this point outside the presence of the jury. I don't want any problems." T. Tr. at 221.

the stand, and it is fair for me to comment.

Mr. Kutsche: The exercise of his right to testify.

The Court: I don't think it is error.[5] Defense counsel made no objection at this time.

During closing argument, the prosecutor made the following comment:

> The defendant just a few minutes ago took the stand and said that he wasn't in Brevard County on the 18th. That's not the issue here today. That's not the issue at all. The issue is whether or not the defendant was here on the 11th. Whether he was in the sand on the 11th. On Vicki's stomach committing sexual intercourse with her, against her will. Ladies and gentlemen of the jury, why didn't the defendant talk about that? If there was some lack of resistance, or if there was something inconsistent about her story, why didn't he stand up and say, well, maybe we did have intercourse. He could have said, we didn't have intercourse. Those are the two things.
>
> Assuming he said we did have intercourse, he would say, well, it was by her consent, or by her suggestion that we do it. Or that there was a slight bit of resistance, that after a point in time, she thought that was a pretty good idea. He didn't do that. He didn't do that at all, ladies and gentlemen of the jury, and it was his perfect and only opportunity to tell anybody what really happened. He could say, well, she was attacking me, for all that's concerned. It just doesn't follow that he wouldn't say anything at all about it, if he disagreed with it, or he could disagree with it by specific and true facts as to her resistance or lack of it.[6]

Not only did defense counsel fail to object to these remarks, he provided additional comment in his rebuttal. "I submit to you, ladies and gentlemen of the jury, Mr. McGahee didn't make any statement about that day, because she said it all. She said it as good as he could say it, and she said

enough. All he could have done was say, yes I had intercourse with her. Denied the rest. But, she had already said they had intercourse." [7] Notwithstanding the absence of objections and defense counsel's additional comment, the District Court found the prosecutor's remarks an impermissible comment on the defendant's silence.

*Prior Incidents*

■ The admission of Kathie Hayes' testimony serves as defendant's first ground in his request for relief. A thorough review of the relevant Florida law leaves us with the firm conviction that the testimony was properly admitted.

The *Williams* decision, relied upon by the trial judge, sets forth the law on the relevance of prior incidents in connection with proving identity and method of operation in a subsequent crime. The Florida Supreme Court held that such testimony "definitely had probative value to establish a plan, scheme or design. It was relevant to meet the anticipated defense of consent... [and] it had a substantial degree of relevance in order to identify the accused." 110 So.2d at 663. Reliance on *Williams* is well-founded in view of its factual similarity with the present case. In *Williams*, the defendant had hidden in the back seat of the victim's car outside a shopping center. Approximately six weeks prior to the rape for which he was on trial, he had hidden himself in the back seat of another girl's car at the same shopping center. In the prior instance, however, the girl had screamed and the defendant fled. This testimony was introduced to show identity and method of operation. The facts in the present case and the testimony proffered at trial emulate that in *Williams*. Kathie Hayes' testimony concerned an episode occurring approximately three and one-half weeks prior to the rape in issue and demonstrated the manner of operation, identity, and type of clothing worn by the defendant.

---

**5.** T. Tr. at 230–31. Mr. Johnston and Mr. Kutsche were both prosecutors assigned to try the case.

**6.** T. Tr. at 244–46.

**7.** T. Tr. at 266.

Not only did Kathie Hayes' testimony relate to the defendant's identity and method of operation, it contributed to negating the defense of consent. The Florida Supreme Court noted the relevance of such testimony for this purpose in *Williams.* Similarly, the defense in the present case evolved around what was considered the victim's lack of resistance to the defendant's advances. Under such authority, we find the trial judge properly admitted Kathie Hayes' testimony.

In addition, the court limited the use of Kathie Hayes' testimony by instructing the jury that the evidence of prior incidents could only be considered "upon the question of the defendant's identity, his plan or design, . . . or his mode of operating." By so doing, he eliminated any potential misconception as to the relevance and use to be given that testimony.

*Denial of Acquittal*

■ The defendant asserts as an alternative ground in his petition that the trial judge erred in denying his motion for a directed verdict of acquittal. In support, he relies on the following comment made by the judge during argument on the motion. "Seventeen years ago, when I first went on the bench, I would have granted your motion, because seventeen years ago a woman, I think, or young woman even at the age of 20, would have been expected to fight really hard and to probably have a busted jaw or have her teeth knocked out." [8] This comment was in response to defense counsel's argument that the victim had failed to display sufficient resistance to the defendant's advances. The defendant reasons that because the trial judge would have ruled differently seventeen years ago, and since the elements of rape had not changed since that time, the court erred in denying the defense motion. While the argument may be novel, we find that what it possesses in creativity, it lacks in merit.

**8.** T. Tr. at 189–90.

**9.** T. Tr. at 191.

**10.** Although the defendant raises an additional point in his answer brief—that the trial court

■ Under Florida law, a motion for a directed verdict of acquittal should be denied "unless there is no legally sufficient evidence on which to base a verdict of guilt." *Knight v. State,* 392 So.2d 337, 339 (Fla.3d Dist.Ct.App.1981); *Downer v. State,* 375 So.2d 840 (Fla.1979); *Shifrin v. State,* 210 So.2d 18 (Fla.3d Dist.Ct.App.), *cert. denied,* 218 So.2d 161 (Fla.1968). The transcript is replete with evidence from which a jury could have rendered a guilty verdict: testimony from the victim, her mother, police officers, the examining doctor, the identification witness, and certain photographs of the scene of the crime. Applying this test to the evidence introduced at trial, we find sufficient legal evidence to create a question of fact for the jury. As the trial judge stated: "Now, whether the fear was well-founded, I don't think is for a judge to make a determination as a matter of law. I believe that determination should be made by the jury as a matter of fact. So, for that reason, I would deny your motion for a directed verdict, and not, because as I say, I would have granted it seventeen years ago." [9] We find the trial judge properly denied the defendant's motion.

*Prosecutorial Comment*

The last issue remaining, and the only one addressed by the District Court, is whether the prosecutor's remarks during closing argument constituted an impermissible comment on the defendant's fifth amendment right to remain silent. [10] Critical to the review of this issue is the absence of objection to these comments at the defendant's trial.

Prior to making his closing argument, the prosecutor approached the bench to advise the court and defense counsel of his intention to comment on the defendant's testimony. Defense counsel made no objection. During the closing argument in which the allegedly improper comments were made,

erred in permitting the prosecutor to comment on the defendant's past convictions—this issue was not raised in the defendant's petition for writ of habeas corpus. We, therefore, decline to consider it now.

defense counsel made no objection. On the contrary, defense counsel seized upon the prosecutor's remarks and included reference to them in rebuttal. Counsel indicated that the defendant did not testify about the date in question because the victim "said it all."

 The fifth amendment is a sacred shield. It is one of the cornerstones of the fortress protecting our liberties. However, it is a shield which must be raised by affirmative action. A defendant cannot have it both ways. We note that the record in this case fails to disclose one objection based upon the fifth amendment. Such absence is consistent with the trial strategy taken by the defendant. One can hardly testify in attack of evidence as to identification and at the same time seek refuge behind the shield of the fifth amendment.

 Despite sailing such a course in the state trial court, here in the federal courts, the defendant tries a different tack and suggests that he must not be punished for his counsel's failure to object when the error complained of seriously affects "the fairness, integrity or public reputation of judicial proceedings." *United States v. Cormier*, 639 F.2d 1177, 1182 (5th Cir. 1981); *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979); Fed.R.Crim.P. 52(b). We acknowledge that when this occurs, plain error exists, and the court may review the alleged constitutional error. The plain error rule serves as a back-up security device in order to assure the protection of the defendant's constitutional rights. Preferably, however, such errors are brought to the trial court's attention so that the judge may effectuate an immediate cure. *United States v. King*, 505 F.2d 602 (5th Cir. 1974).

 Plain error, however, must appear in the record. The doctrine has no application in the absence of error. A review of this record shows none. During the preliminary charge conference the trial judge inquired as to whether the defendant would take the stand, and if not, whether the defense would want "the charge" read. Defense counsel replied that they had not yet determined whether the defendant would testify and they would inform the court in the morning. The next morning the defendant testified; defense counsel made no additional charge request and none was given. The fifth amendment was never raised.

 The fifth amendment stands as a sentinel for the protection of a defendant's constitutional right to remain silent. Concomitant with that right is the prohibition of prosecutorial comment on its exercise. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The right is not self-executing, however. When a defendant voluntarily testifies, he waives his fifth amendment right and places himself in the same position as any other witness, subject to cross examination as to matters revealed in his direct testimony. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 148, 2 L.Ed.2d 589 (1958); *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Our precedent has made it clear "that when a defendant voluntarily testifies *to the merits*, and not just upon a *purely collateral* matter, the prosecutor may comment upon the defendant's failure to deny or explain incriminating facts already in evidence." *Calloway v. Wainwright*, 409 F.2d 59, 65 (5th Cir.), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969) (emphasis supplied).

Neither the State of Florida nor the defendant quarrels with the contents of this statement, but rather with its application. The district judge relied upon *Calloway* and *Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1942) in determining that the prosecutor's remarks were improper, and constituted plain error. While his reliance on their precedential value was proper, we find the cases factually distinguishable and therefore not binding upon our decision.

In *Johnson*, the defendant asserted his fifth amendment privilege during his direct testimony. The Court found prosecutorial comment improper when the defendant had properly invoked his fifth amendment privilege. Even so, the Court found the privilege had been waived by defense counsel's withdrawal of his previously entered objec-

tion, and by his "acquiescing in the treatment of the matter by the court." 318 U.S. at 200, 63 S.Ct. at 554–55. Having established the defendant's waiver, the Court found the comment to be less prejudicial than that necessary to constitute error necessitating a new trial.

The State of Florida contends that unlike *Johnson*, the defendant in this case never asserted his fifth amendment right, and thereby waived it. The record reveals the correctness of the State's contention. Thus, while *Johnson* condemns prosecutorial comment once a defendant invokes his fifth amendment privilege, it recognizes waiver and acknowledges that comment may not always qualify as grounds for a new trial. We find the reasoning in *Johnson* supports our holding that the defendant, McGahee, waived his fifth amendment privilege by failing to assert it and by testifying as to the merits on the issue of identification.

In *Calloway*, the court determined that the defendant's testimony concerning the voluntariness of his confession was purely collateral and precluded prosecutorial comment on matters not addressed by the defendant. Thus, it appears that the collateral nature of the testimony may be a decisive factor in determining whether prosecutorial comment creates error.

"If it be asked what 'collateral' means, we are obliged either to define it further,— in which case it is a mere epithet, not a legal test,—or to illustrate by specific examples,—in which case we are left to the idiosyncracies of individual opinion upon each instance." IIIA Wigmore on Evidence 961 (1970). Regardless of the abstract nature of the term, we find a distinct difference in the collateral nature of the voluntariness of a confession in *Calloway* and testimony regarding the identity and method of operation in the present case.

The Ninth Circuit had occasion to explore the depth to be given *Calloway* in *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). In *Hearst* the defendant testified about a series of events occurring prior to and after the robbery for which she was on trial. During cross examination, she asserted her fifth amendment right forty-two times. On appeal, she contended that the court erred in not limiting the scope of cross examination in order for her to avoid asserting her fifth amendment privilege. Relying on *Calloway*, she contended that her direct testimony did not address the merits of the case, but had only concerned "the collateral issue of the voluntariness of certain statements." *Id.* at 1339. The court disagreed. Distinguishing *Calloway*, the court found that she had not only testified about the involuntary nature of her admissions, but had also testified that she had participated in the crime under duress. This additional testimony concerned a main element of the crime charged and thus did not fall within the narrow scope of "collateral" under *Calloway*.

We believe that the defendant's testimony in the present case also falls outside the protective shield set forth in *Calloway*. The defendant testified in order to rebut critical testimony given by Kathie Hayes concerning his identity. Kathie Hayes' testimony concerned a main element in the prosecution's case—identity and method of operation; not a collateral issue, such as the voluntariness of a confession.

An attack on the voluntariness of a confession is directed at the circumstances surrounding the making of the inculpating statement (duress, physical force, environment); it does not speak to the merits of the confession. The circumstances are collateral to the substance of the confession. It would be improper for a prosecutor to comment on a defendant's testimony where it had been limited to such a collateral issue. If, however, a defendant addressed the substance of his confession (motive, manner of operation, plan), he would then have testified on the merits and lost the protection afforded by *Calloway*. McGahee did just that. He testified on the essential element of identity. In so doing, he crossed the bridge into the merits of the case, and left behind him the constitutional protection afforded collateral testimony.

In *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1916), the

United States Supreme Court addressed a similar issue when it ruled on a jury instruction which permitted prosecutorial comment once the defendant took the stand to testify. In a consolidated case involving prosecution under the White Slave Traffic Act, the defendant testified in rebuttal to the testimony of certain girls named in the indictment. He limited his testimony to incidents occurring prior to the travel in issue at the trial. The trial court instructed the jury it could draw inferences from the defendant's failure to address the incriminating evidence. The Court approved of the trial court's instruction, which called attention to the defendant's selective testimony without requiring the defendant to explain every inculpating fact.

The Court reasoned

> that where the accused takes the stand in his own behalf and voluntarily testifies for himself, he may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it.

*Id.* at 494, 37 S.Ct. at 198. The *Calloway* court recognized the impact of *Caminetti*, but created an exception for testimony solely collateral. That exception does not apply to the testimony in the present case. Our facts warrant application of *Caminetti's* general rule: once the defendant testifies to the merits of the case, he subjects his testimony to prosecutorial comment on his failure to explain incriminating evidence.

■ In criminal cases, certain pretrial proceedings may require a defendant to testify without fear that such testimony may be used against him. Procedural safeguards have been designed to protect against abuses of constitutional rights. For this reason, testimony elicited during a suppression hearing may not be used to establish guilt in the subsequent trial. *Simmons*

*v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Testimony at bond hearings is not admissible absent a knowing and intelligent waiver by the defendant of his rights. *United States v. Dohm*, 618 F.2d 1169 (5th Cir. 1980) (*en banc*). But, the law does not provide a sword by which the defendant may selectively testify as to the merits of his prosecution, yet shield himself from comment on his failure to explain incriminating evidence properly admitted prior to his testimony.

■ We are a little perplexed by the prosecutor's comments during closing argument. From the record, it appears that he had ample evidence upon which to comment without encroaching upon such a volatile area. Nevertheless, we do not find these comments made under these circumstances improper.[11] By testifying on the issue of identity, we find the defendant waived his fifth amendment right, thereby granting the prosecution the opportunity to present fair comment on the defendant's failure to address incriminating evidence properly before the jury. The District Court's order granting habeas corpus is therefore VACATED and the case REMANDED for the entry of an appropriate order denying relief.

---

11. In granting the writ of habeas corpus, the District Court determined that the prosecutor's remarks constituted improper comment on the accused's failure to testify. The judge further concluded this comment "denied petitioner his right to a fair trial." As we find the comment did not violate the defendant's fifth amendment right, we decline to hold the comment independently deprived him of a fair trial.