**Delores BROWN, Petitioner,**

v.

**Clarence TRIGG, Supt., Indiana Attorney General, Defendants.**

**No. S 84-182.**

United States District Court, N.D. Indiana, South Bend Division.

July 13, 1985.

Thomas M. Leatherman, Goshen, Ind., for petitioner.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by Delores Brown, an inmate incarcerated at the Indiana Women's Prison in Indianapolis, Indiana. The matter is now before this court on respondents' motion to dismiss, filed as part of their Return to Order to Show Cause. In accord with the dictates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court.

A careful examination of the underlying state court record and the opinion of the Supreme Court of Indiana, *Brown v. State*, published at 448 N.E.2d 10 (1983), reveals that petitioner has exhausted her available state court remedies per 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Both sides having briefed their respective positions, this petition is now ripe for ruling.

Petitioner was convicted in a state court jury trial of felony murder by arson on two counts for which she received a determinate sentence of thirty (30) years. These convictions were affirmed on appeal by the Supreme Court of Indiana. Petitioner now brings this petition for a federal writ of habeas corpus.

Petitioner raises the following issues in her application for habeas relief:

(1) Petitioner's conviction was obtained without allowing her to present evidence to disprove or rebut proof on a material element of the crime charged, knowingly, and was obtained and is in violation of the sixth (sic) and fourteenth (sic) amendments of the United States Constitution.

(2) Petitioner's conviction was obtained by allowing the State of Indiana to present through an agent of Petitioner's attorney, incriminating statements she made to him in violation ot the fifth, sixth and fourteenth (sic) Amendment (sic) to the Constitution of the United States.

This court heard oral argument by both parties on March 5, 1985. This case is therefore, ripe for ruling.

## I.

When petitioner was arrested the charges were initially brought against her in the juvenile court. The State of Indiana moved to waive her case to adult court. The Elkhart County Court, Elkhart County, Indiana, ordered petitioner examined by a psychologist. The psychologist gave petitioner tests to determine her intellectual and psycho-educational function level. The psychologist determined that petitioner was functioning at a fourth grade level, and has an I.Q. of 78.

In an attempt to prevent waiver to adult court, petitioner's attorney hired a polygraph operator to conduct a polygraph test to determine the intentions of the petitioner at the time she started the fire. The polygraph operator determined the questions to ask petitioner, asked her those questions during the testing and arrived at his conclusions. He concluded that petitioner did not intend to hurt anyone by starting the fire.

The juvenile court waived jurisdiction to the adult court. Prior to the adult trial, the State of Indiana filed a Motion in Limine requesting that the psychological evidence be excluded. At the adult trial, petitioner's attorney attempted to introduce evidence concerning petitioner's mental ca-

pacities through the psychologist, as an expert witness, to disprove or rebut a material element of the crime charged. Petitioner sought to establish that she did not have the mental capability to form the requisite culpability of "knowingly" committing the crime charged, as required under Indiana law. The petitioner was precluded from introducing such evidence.

During the adult trial, the trial court permitted the State to use the testimony of the polygraph operator concerning petitioner's incriminating statements made during the polygraph test, over the objection of petitioner's counsel. The trial court did not allow petitioner's attorney on cross-examination of the polygraph examiner to establish that the statements by petitioner were made within the context of a polygraph test.

On appeal, the Supreme Court of Indiana held that since petitioner did not plead insanity then expert testimony concerning her mental capabilities was inadmissable as invading the province of the jury with regard to the resolution of factual matters. The Court further held that petitioner waived her privileged communications right during her juvenile hearing and thus, the evidence concerning the polygraph questions was admissible. The Court also held that petitioner's Sixth Amendment Right to full confrontation was not denied when the trial court limited the cross-examination of the polygraph operator. The one limitation pertained to the exclusion of questions concerning the occurrence of the statements by petitioner during a polygraph examination test.

## II.

■ Petitioner contends that failure to allow her to present expert testimony at her trial regarding her mental capabilities to form the requisite intent to commit the crimes charged denied her due process of law. Petitioner claims that she did not possess the mental ability to "knowingly" (as charged in the information) commit felony murder by arson and that she could establish the same through an expert wit-

ness. She claims that she should have been allowed to present evidence that would be relevant or material to disprove the culpability required to be proven by the State as an element of the crimes charged.

Petitioner was charged with having "knowingly" as definee in I.C. § 35–41–2–2(b) [Burns 1979 Repl.] committed arson. "Knowingly" is defined as: "A person engages in the conduct, he is aware of a high probability that he is doing so." As succinctly put by the Supreme Court of Indiana in its opinion at 448 N.E.2d 19: "It is appellant's theory that she was of such low mental capacity that she was unaware of a high probability that her intentional damage of the property of another would endanger human life. *See*, I.C. § 35–43–1–1(a) [Burns 1979 Repl.]. She claims the evidence should have been admitted because it was relevant to the question of whether she entertained the intent with which she was charged."

The Supreme Court of Indiana when faced with this issue found:

It is well settled, however, that low mental capacity is not a defense to a criminal charge. *Flowers v. State*, (1957) 236 Ind. 151, 139 N.E.2d 185. *See generally*, 31 Am.Jur.2d *Criminal Law* § 40 (1981). Appellant did not interpose an insanity defense. Evidence purporting to go to the actor's mental capacity was not a proper subject of expertise. It was rather a question of fact for the jury to resolve. *See, Simpson v. State*, (1978) 269 Ind. 495, 381 N.E.2d 1229. There was no error in not allowing witness Oyer to testify. *Brown v. State*, at 19.

The petitioner here contends that her due process rights were violated under the teachings of *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.1978). In the *Hughes* case, the Seventh Circuit Court of Appeals held that psychiatric evidence was admissible on the issue of intent to kill at the time of appellant's trial. In *Hughes* the petitioner was charged with two counts of first degree murder which under Wisconsin law required the showing of specific intent. The petitioner there argued the psychiatrist's testimony should be allowed to es-

tablish that he lacked the requisite intent to commit the murder. The Wisconsin law required that the perpetrator had the specific intent to commit the first degree murder and it also established a rebuttable presumption of intent. The *Hughes* Court found:

Thus, the district court was correct in holding that by instructing the jury presume intent if not rebutted, and by excluding psychiatric evidence offered to rebut the presumption, Wisconsin set up a conclusive presumption which unconstitutionally relieved the prosecution of the burden of proving the element of specific intent beyond a reasonable doubt.

*Id.* at 1255.

The Court went on to find:

Were this simply a case where a jury instruction on presuming intent improperly left the jury with the impression that the petitioner had the burden of persuasion to disprove an element of the crime, we would be satisfied to affirm the writ of habeas corpus and send the case back to the state courts for a new trial with directions to avoid the suspect instructions. However, the constitutional error present in the Wisconsin procedure is not merely the result of a rebuttable presumption becoming improperly conclusive when combined with a valid exclusionary rule. The exclusion of psychiatric evidence offered to show that the petitioner lacked the capacity to form specific intent to kill the two victims, is, by itself, constitutionally infirm. (footnote omitted) *Id.*, at 1255.

The Seventh Circuit Court of Appeals in *Muench v. Israel*, 715 F.2d 1124 (7th Cir. 1983) has recently held that a state is not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent. In *Muench*, the petitioner had been convicted of first degree murder and argued he was incapable of forming the specific intent required to prove first degree murder because of a personality disorder. He argued that expert psychiat-

ric testimony would establish that he could not form the specific intent to commit the crime. The Court found petitioner's argument an attempt to impose on Wisconsin law the doctrine of diminished responsibility, which the Court refused to do, finding no basis for doing so under Wisconsin law.

The Court stated the following in regard to Muench's argument:

Petitioners' argument regarding the materiality of the proffered psychiatric testimony is straightforward. Whether they actually committed their homicidal acts with the mental purpose of ending a human life was a fact in issue. Logically, their "capacity" to "form" that intention is a fact in issue, for if they lacked the capacity to form the intent, then they did not actually form that intent. Hence, their capacity to form an intent to kill is a fact in issue, and evidence standing for that proposition is material

It is naturally tautological that one who lacks the capacity to do something could not have done that something. Thus conceptualized, the process of cognition is described in essentially, physiological terms. "forming" an "intention" can be likened to "performing" an "action," and just as evidence of a physical handicap which rendered a person incapable of performing a particular action would be material in a case where the person is accused of performing that action, it would logically seem that evidence of a mental handicap which rendered a person incapable of forming a particular intention would be material where the person is accused of forming that intention. If specific types of intentions were as discrete as particular types of actions; if one's mental abilities were as demonstrable as one's physical abilities; if the relationship between one's mental handicaps and a specific intent were as identifiable as the relationship between one's physical handicaps and a specific physical movement; and if one formed an intention the way one performs an action, the analogy would be compelling, but it is not.

The essential flaw in petitioners' argument is that the basic fact which they wish to establish is that they suffered from a personality disorder. It is not disputed that experts in psychology are competent to testify regarding that basic fact. What is the dispute—indeed, the entire debate over the doctrine of diminished capacity has as its focal point—is whether a personality disorder is probative of the defendant's capacity to form an intent to kill. Petitioners' experts contended that personality disorders rendered them unable to form such an intent. That is, their experts contended that the fact of their personality disorders was a material issue in their cases because the fact was a mental state in issue. In short, petitioners essentially maintain that the psychiatric testimony they proffered is relevant because their witnesses said so. The proposition does not survive its statement. *Muench,* 715 at 1143.

■ This court following the dictates and reasoning of the Seventh Circuit Court of Appeals and applying Indiana law hereby finds that Indiana is not required to allow psychological testimony to prove a person's capacity or incapacity to form the intent to commit a crime absent some basis for it in the Indiana law. *Muench, supra; Flowers v. State, supra.*

The Indiana courts have long held that low mental capacity is not a defense to a criminal charge, *Flowers v. State, supra,* and that evidence regarding one's mental capacity is not a proper subject of expertise. *Simpson v. State, supra.* This court finds no basis in Indiana law to impose a doctrine of diminished capacity on Indiana law.

This court therefore finds that petitioner was not denied due process when evidence in the form of psychological or psychiatric testimony regarding her mental capacity to form intent to commit the crime charged was precluded during her trial.

### III.

■ Petitioner's attorney, in an attempt to prevent her waiver to adult court hired a polygraph examiner to perform a poly-

graph test on petitioner to determine whether, in his opinion, petitioner had the requisite intent to commit the crime. Petitioner's attorney then used the testimony of the polygraph examiner and his conclusions during the juvenile waiver hearing. The polygraph examiner testified that during the examination the petitioner stated that she started the fire by pouring gas on carpeting in her mother's home, igniting it with a match. The polygraph examiner testified that petitioner further stated that she only intended to burn a small hole in the carpeting to let her mother know how unhappy she was with her and that she did not intend to cause extensive damage or cause harm to her brothers. The juvenile court waived petitioner to adult court. The State then used the above testimony during the adult trial to show petitioner intended to start the fire resulting in the felony murders.

Petitioner contends that the state trial court erred when admitting this testimony because it violated the attorney-client privilege and the doctrine of work product.

Both parties agree that communications between the polygraph examiner, an agent of the attorney, and the client are privileged and not subject to exploration in the criminal process.

The Supreme Court of Indiana held that petitioner had waived her right to that privilege when she called the polygraph examiner as a witness at the juvenile hearing.

The petitioner contends that she did not waive her right to the privileged information despite the fact that she introduced the testimony into evidence during the juvenile hearing. Petitioner claims that since the juvenile proceedings are to be kept confidential per state statute the hearing is analogous to a motion to suppress and thus, the testimony is not admissible in the case at the adult trial. Petitioner cites and relies on the holding in *Simmons v. U.S.,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1966), wherein the Supreme Court held that the trial court's admission at trial of the defendant's statement made during a suppression hearing to prove the underlying criminal charges constitutionally defec-

tive, violated the defendant's Fifth Amendment right. The Court stated:

> Thus, in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be submitted against him at trial on the issue of guilt unless he makes no objection.

*Simmons,* at 394, 88 S.Ct. at 976.

The Supreme Court in *Simmons* was concerned with the usage of evidence obtained in a suppression hearing in an effort to attack a collateral matter to the criminal charge for purposes of establishing guilt during the trial of the merits of the case. In this case, petitioner introduced certain evidence at the juvenile hearing which pertained directly to the merits of the case. The State then introduced that same evidence at the adult trial and petitioner attempted to invoke the attorney-client privilege and the work product doctrine. The trial court rejected both arguments and allowed the testimony. The testimony of the polygraph examiner went directly to the meritis of petitioner's guilt and did not involve collateral issues as in a suppression hearing. One precedent had made it clear "that when a defendant voluntarily testified to the merits, and not just upon a purely collateral matter, the prosecutor may comment upon the defendant's failure to deny or explain incriminating facts already in evidence." *Calloway v. Wainwright,* 409 F.2d 59, 65 (5th Cir.) *cert. denied,* 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969). *See also, McGahee v. Massey,* 667 F.2d 1357 (11th Cir.1982), *cert. denied,* 459 U.S. 943, 103 S.Ct. 255, 74 L.Ed.2d 199 for discussion of various pretrial statements and the issue of waiver regarding collateral matters versus statements involving the merits of the case.

In this case, it was not the petitioner who testified, but rather an agent of the petitioner. Petitioner introduced the testimony at the juvenile hearing in an attempt to prevent waiver to the adult court. She did not use the testimony as an attack on a collateral matter to the criminal charge itself, as in a suppression hearing. The juvenile court did not find it to be in the best interests of the petitioner to retain jurisdiction of her case in the juvenile court even in light of her polygraph and psychological evidence. Petitioner is not forced to forfeit one constitutional right to protect another constitutional right in this case.

Petitioner further argues that the testimony of the polygraph examiner was protected by the work produce doctrine as outlined in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and discussed in *United States v. Nobles*, 422 U.S. 255, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In *Nobles*, the defense counsel sought to introduce pretrial statements of certain witnesses obtained by an investigator hired by the defense to show their prior inconsistent statements. When the defendant refused to let the prosecutor inspect the investigator's report for purposes of cross-examination, the trial court ruled that the work product doctrine protected the report from disclosure to the prosecutor, thus the investigator could not testify at all about the statements of the witnesses. The Supreme Court held:

> The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance

the work-product doctrine to sustain a unilateral testimonial use of work-product materials then he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination. *See, e.g., McGautha v. California*, 402 U.S. 183, 215 [91 S.Ct. 1454, 1471, 28 L.Ed.2d 711] (1971). (footnote omitted.) *Nobles*, at 239, 95 S.Ct. at 2170.

This court does not find petitioner's argument of work-product protection persuasive. Rather, this court finds that the petitioner's introduction of the testimony constituted waiver of the work-produce doctrine protection. The polygraph examiner's testimony concerning petitioner's intent was a germane issue to the merits of the criminal charge. In fact, as petitioner has aptly pointed out, the testimony bears directly on a vital element in the criminal charge, the element of intent, which element the prosecutor had to prove at trial.

Therefore, this court finds that petitioner waived her right to attorney-client privilege and work product protection when she introduced the testimony of the polygraph examiner during the juvenile hearing, and that the trial court did not violate any of petitioner's due process rights by admitting said testimony into evidence at the criminal trial.

## CONCLUSION

Accordingly, it is the order of this court based on the foregoing reasons that the respondent's motion to dismiss as part of their return to show cause be and is hereby GRANTED; writ is DENIED; petition DISMISSED. SO ORDERED.