This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, William Bryant (hereinafter "Bryant"), appeals his conviction of murder and sentence of fifteen years to life in the Lorain Correction facility at Grafton, OH. For the following reasons, we affirm the decision of the trial court.
Bryant had an approximately nine year relationship with Jeanette Thomas (hereinafter "Thomas"). The couple lived together in Thomas' house and, on occasion, fought. On January 2, 1998, a 911 call was placed from Thomas' address. In that phone call, Thomas screamed that Bryant was killing her. The dispatcher contacted the police and informed them of a stabbing in progress at Thomas' address. Upon arrival, the officers found Thomas in the bedroom unconscious.
Thomas suffered two main patterns of injury. There were multiple stab wounds; five in her back and one in her left side. A knife blade was sticking out of her back and a knife was sticking out of her side. Thomas also suffered fourteen blunt impact injuries to her head and one blunt impact injury to her back with a curved pattern causing fractures, brain damage and bleeding. A ball peen hammer with the handle broken off was found next to her body. Thomas died at the hospital and the coroner pronounced her death to be a homicide.
Approximately half an hour later, Bryant placed a 911 call from his sister's home asking about Thomas' condition. He said he had been in a fight with Thomas and that he wanted to turn himself in. When officers arrived, Bryant came out of the house with blood on his pants and jacket and was arrested and Mirandized.
Before Bryant was questioned by the police at the station he was Mirandized again. During that videotaped questioning Bryant was cooperative and gave a written statement. He claimed his actions were in self defense because of the following events: While lying in bed together, Thomas, who was high on cocaine, accused him of "messing around" with another woman in her presence. She then grabbed a knife from the window sill above the bed and attempted to stab him. Bryant was forced off the bed and into a corner with Thomas on top of him continuing to stab at him. In response, Bryant grabbed two knives and a ball peen hammer off the window sill to stab and hit her. It is Bryant's contention that while Thomas, 220 lbs., was on top of him, he reached around to stab her in the back and then hit her with the hammer. Once Thomas moved away from him to call 911, Bryant went into the bathroom to wash his hands and, listening to her phone call with 911 and knowing "help" was on its way, he put his jacket on and departed.
On February 6, 1998, Bryant was indicted for Murder in violation of R.C. 2903.02(A). A Motion to Suppress the admission of the videotaped statement was filed and overruled. A Motion to Determine Competency at the time of the offense and a plea of not guilty or not guilty by reason of insanity was entered on December 8, 1998. The trial court ordered a forensic examination by the Forensic Psychiatric Center of Northeast Ohio, Inc., and an independent evaluation to determine sanity at the time of the commission of the act was also conducted. On May 10, 1999 the plea of not guilty by reason of insanity was withdrawn and a not guilty plea was entered. The matter proceeded to a jury trial, and on May 19, 1999 Bryant was found guilty of murder and sentenced to 15 years to life in Lorain Correctional Facility at Grafton, Ohio.
Bryant appeals his conviction and sentence asserting the trial court erred by: 1) allowing into evidence statements made during a competency evaluation; 2) permitting his videotaped statement he made to the police to be viewed by the jury; 3) admitting gruesome photographs which tended to unreasonably inflame the jury against Bryant, and; 4) the jury's verdict was against the manifest weight of the evidence. For the following reasons, we affirm Bryant's conviction of murder in violation of R.C. 2903.02(A).
In his first assignment of error, Bryant asserts the trial court should not have allowed into evidence any statements made by Bryant during his competency evaluation because they were used to establish the issue of guilt. Prior to the trial, both a court-ordered and an independent mental evaluation of Bryant were conducted. R.C. 2945.371(J) provides "no statement that a defendant makes in an evaluation * * * relating to * * * the defendant's mental condition * * * shall be used against the defendant on the issue of guilt in any criminal action or proceeding."
The Fifth Amendment prohibits statements made during a mental evaluation from being admitted on the issue of guilt unless the defendant has been advised of his rights as required by Miranda and has knowingly waived those rights. Estelle v. Smith (1981), 451 U.S. 454,101 S.Ct. 1866. These statements may not be used to show the defendant committed the acts constituting the offense. State v. Cooey (1989), 46 Ohio St.3d 20. However, an accused's voluntary, but unMirandized statement, can be used to impeach trial testimony. State v. Hill (1996), 75 Ohio St.3d 195, 207
citing Harris v. New York (1971), 401 U.S. 222, 91 S.Ct. 643. A defendant's statements made during an evaluation can be admitted to refute his assertion of mental incapacity, Cooey at 32, and to impeach credibility in related testimony. State v. Pohlable (June 2, 1983), Greene App. No. 82 CA 60, unreported, 2. Credibility is a collateral issue which does not relate to the issue of guilt. Id. citing Callowayv. Wainwright (1969), 409 F.2d 59.
During direct examination Bryant testified in detail that Thomas attacked him with a knife and he had no choice but to defend himself using two knives and a hammer in his attempt. In cross examination the state proceeded:
 Q. You remember talking to Dr. Eberle and a Dr. Palumbo?
A. Yes, I do.
Q. Did you not tell them that you snapped?
A. That I snapped?
Q. That you snapped?
 A. If — let me ask you a question. If I attacked you and stabbed you —
 Q. Just answer the question. You told the doctors, both of them, that you snapped when you attacked Jeanette Thomas?
 A. If I attacked you and stabbed you, you going to snap or sit there and let me do it to you?
 Q. You said, "I don't remember what happened." You told them that, did you not?
A. Yeah, I told them that.
 Q. You told them, "I don't remember what happened. I snapped"?
A. I told them that because I am not crazy.
 Q. You're not crazy but you heard voices from the dead telling Jeanette to kill you?
A. No, I didn't.
Q. You didn't tell the doctor that?
 A. I told the doctor that because I told them what I talked to them —
Q. What are your voices telling you today?
Mr. Taylor: Objection.
A. That you're trying to trick me.
(Tr. pp. 287-288)
Defense counsel objected only after the ninth question in the series and the record reflects the objection was sustained. There were no motions made by defense counsel to strike the testimony or have the court give the jury a curative instruction, and defense counsel did not attempt to redirect Bryant on this subject. No further questioning on this matter occurred.
The first question in the series posed by the State, whether Bryant said he'd "snapped", clearly is an attempt to impeach Bryant, as it refutes his previous assertion that he was defending himself, and was so argued by the State to the trial court. In addition, Bryant did not object to the first eight questions, thereby waiving the issue on appeal. Furthermore, the actual objection made at trial regarding the "voices" was sustained. The trial court did not err. Bryant's first assignment of error is meritless.
In his second assignment of error, Bryant asserts the trial court erred by denying his pre-trial motion to suppress his videotaped statement to the police. The standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286, 288. Bryant alleges the statement was obtained in violation of his rights guaranteed in the Fifth and Fourteenth Amendment of the United States Constitution and Article I, §§ 1, 2, 10, and 16 of the Ohio State Constitution. He argues the statement was made involuntarily and is, therefore, inherently unreliable.
The record shows the trial court held a suppression hearing regarding this videotaped statement and found the "defendant knowingly, intelligently and voluntarily waived his applicable Constitutional rights against self incrimination after being properly advised by officers of Youngstown Police Department." Bryant failed to provide this court with a transcript of the suppression hearing, contrary to App.R. 9(B), which provides an appellant shall provide a transcript when it is necessary for appellate review.
 "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
 Any lack of diligence on the part of an appellant to secure that portion of the record necessary to facilitate meaningful review of the errors raised in the appeal should inure to his disadvantage rather than to the disadvantage of the appellee. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19. Therefore, absent a transcript of hearing or other App.R. 9(C) or (D) alternative submitted by Bryant, we must presume the regularity of the trial court proceedings and affirm. State v. Dillon (Mar. 8, 1999), Belmont App. No. 96-BA-17, unreported, 5. Bryant's second assignment of error is meritless.
Bryant's third assignment of error asserts the autopsy photographs labeled Exhibits B, C, D, E, F, and G (State's Exhibits 6, 7, 8, 10, 12, and 14 respectively) were cumulative, inflammatory and redundant, and as the information was admitted into evidence via testimony of the coroner, the photographs should not have been admitted. It is well settled that the determination of whether photographs meet the test for admissibility rests within the sound discretion of the trial court. State v. Slagle
(1992), 65 Ohio St.3d 597, 601. The reviewing court will not interfere with the trial court's balancing of the probative value against the potential prejudicial effect unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby. Id. at 602. Pursuant to Evid.R. 403, the probative value of the photographic evidence must substantially outweigh the danger of unfair prejudice to the defendant. State v. Tingler (1972), 31 Ohio St.2d 100, 103-4.
The record reflects there was no objection at trial to an autopsy photograph of the victim's face and, therefore, Bryant has waived this issue. State v. Allen (1995), 73 Ohio St.3d 626, 633. As for the remaining photographs, the record shows only five additional autopsy photographs were admitted; 1) an x-ray of the victim's torso showing a knife blade within the body; 2)a view of the victim's back showing four knife wounds and a knife blade still protruding from one wound; 3) another angle of the victim's back with the knife removed and displayed to show how far the blade punctured the body; 4) a side view of the victim's head which shows several blunt trauma wounds including one behind the ear, and; 5) a top view of the victim's head displaying blunt trauma wounds around the crown of the head. Testimony regarding the x-ray and the photograph of the crown of the head by the coroner identified and numbered the victim's wounds. The photographs of the stab wounds on the victim's back and the side of the victim's head were verified by the lab technician who took them as accurate depictions of the victim at the autopsy. The trial judge excluded other photographs.
The Ohio Supreme Court in State v. Maurer (1984), 15 Ohio St.3d 239, paragraph seven of the syllabus, held:
 "properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."
 Bryant argues the photographs themselves were unnecessary and redundant since the coroner testified to the victim's wounds and cause of death. The Ohio Supreme Court held in a series of rulings photographs illustrating the defendant's purposeful intent to murder, State v. Davis (1991), 62 Ohio St.3d 326, 348, the type and number of wounds suffered by the victim, State v. Allen (1995), 73 Ohio St.3d 626, 636, and the testimony of the coroner, State v. Moore
(1998), 81 Ohio St.3d 22, 32, can carry sufficient probative weight to overcome potential prejudice.
Bryant also argues the photographs were cumulative. However, the sheer number of photographs admitted does not result in prejudice unless the photographs are particularly gruesome. Allen at 636. Although gruesome photographs may be admissible, the State may not use them to "appeal to the jurors' emotions and to prejudice them against the defendant." Statev. Keenan (1993), 66 Ohio St.3d 402, 407 quoting State v. Thompson
(1987), 33 Ohio St.3d 1, 15. Even though the photographs depicting the x-ray of the torso of the victim and the crown of the victim's head were enlarged at trial, and the wounds were numbered by the coroner to aid in his explanations to the jury, the questioning was restricted to the number of wounds and the types of instrumentalities that caused them. There was only a brief reference to the photographs by the State in their closing statement. The record simply does not reflect an "appeal to the jurors' emotions" with these photographs.
If the probative value of the photographs outweighs the potential prejudice, even gruesome photographs may be admitted. Gerish at 33, citingState v. Phillips (1995), 74 Ohio St.3d 72, 77. The photographs admitted in this case were limited in number, clarified the testimony regarding the number and placement of wounds, and aided in the testimony of the coroner. Bryant argues the State intended to introduce the photographs during another stage of the trial, violating a rule against repetitive introduction of gruesome photographs. Nothing in the record reflects this actually happened and it is, therefore, irrelevant. The trial court did not abuse its discretion by admitting the autopsy photographs. Bryant's third assignment of error is meritless.
In his fourth assignment of error, Bryant asserts the jury's verdict was against the manifest weight of the evidence as the evidence presented could not support a conviction of murder. The weight of the evidence is the inclination of the greater amount of credible evidence advanced at trial to support one side of the issue rather than another. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. To reverse a criminal conviction based on the weight of the evidence the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice that a conviction must be reversed and a new trial ordered. State v. Gore (1999),131 Ohio App.3d 197, 201 citing Thompkins, supra at 386.
First, Bryant argues the State failed to establish the requisite elements required for sustaining the charge of murder. Ohio's murder statute, R.C. § 2903.02, provides "no person shall purposely cause the death of another." No requirement exists that purpose or intent to kill is proven by direct testimony. State v. Eley (1996),77 Ohio St.3d 174, 180. Purpose to kill can be "deduced from all surrounding circumstances, including the instrument used to produce death * * * and the manner of inflicting the fatal wound." Id.
The record contains sufficient testimony that, if believed, proves Bryant purposely caused the death of Jeanette Thomas. The coroner testified to fourteen separate wounds caused by blunt force trauma to the victim's head, and six stab wounds to the victim's back and side. In Bryant's own testimony he admitted to repeatedly stabbing the victim with two knives and hitting the victim with a hammer, all of which were recovered at the scene. Although the identity of the perpetrator was not in issue, a 911 recording in which Thomas told the 911 operator that Bryant was killing her, was admitted into evidence. The sheer number and location of the wounds could have convinced a rational trier of fact that Bryant acted purposely.
Second, Bryant argues he established self-defense because he reasonably believed he was in danger of imminent death or severe bodily harm. Self-defense is an affirmative defense, "the burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of evidence, * * * is upon the accused." R.C. §2901.05(B). To establish self-defense, the following elements must be shown:
 "(1) the [accused] was not at fault in creating the situation giving rise to the affray; (2) the [accused] has a bonafide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was in the use of such force; (3) the [accused] must not have violated any duty to retreat or avoid the danger."
 State v. Bigsby (May 15, 2000), Jefferson App. No. 96 JE 52, unreported, citing State v. Robbins (1979), 58 Ohio St.2d 74 paragraph two of syllabus.
In this case, Bryant testified Thomas attacked him with a knife, forcing him into a corner where he could not retreat and, in response to the belief that he would be killed or seriously injured, his only means of escape was to stab her and hit her with a hammer. He also testified that since Thomas was alive and on the phone with 911 when he departed, this shows he retreated as soon as he could. In addition, to confirm his fear of being stabbed, he testified he had been stabbed in the neck by a woman in the past. Further, testimony and photographs were admitted regarding several cuts on Bryant's hands which he claims were defensive wounds suffered while he was trying to fend off Thomas. In his videotaped statement to the police, Bryant claimed he acted in self-defense. The only other witness called on behalf of the defense was Eric Duffy, the Director of Field Services for the National Federation of the Blind of Ohio. Duffy testified that a blind person compensates for their lack of sight, not with enhanced hearing, but in using hearing to get information sighted people get visually. Blindness alone, according to Duffy, would not prevent someone from posing a threat. The jury was also instructed on self-defense in the court's charge.
The coroner testified that most of the blows were to the victim's back and the back of her head. There were no defensive wounds found on the victim's hands. The coroner believed the positioning of the wounds and the victims blindness may have been factors in the absence of defensive wounds. According to the coroner, the cuts on Bryant's hands could have been caused by the blade of the knife breaking off in his hand. Furthermore, Bryant's departure from the scene while Thomas was still alive is not dispositive. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." Jenks, supra at 274.
The jury had before them evidence of two versions of the events. Which one they chose to believe was within their discretion. "When there exists two fairly reasonable views of the evidence, we may not choose which we prefer. Instead, we must accede to the jury, which is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Gore, supra at 201 citing Season's Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The trier of fact is not required to acquit if all the elements of self-defense are established.Bigsby, supra at 1.
Third, Bryant argues the testimony of the coroner, Dr. Jesse Giles, was uncertain and impeached. The autopsy report lists the cause of Thomas' death as skull fractures with brain contusions and lung stabs with internal hemorrhage due to multiple blunt force impacts of the head and multiple stab wounds of the trunk. Acute cocaine intoxication is listed as a contributory factor. Bryant argues the actual cause of death may not have been solely due to the stab wounds and blunt force trauma, and may have been caused by an "extraordinary amount" of cocaine in Thomas' system. It is also Bryant's position that the effects of the cocaine, elevated blood pressure and increased heart-rate caused Thomas to bleed quicker after the stab wounds and blunt trauma occurred, preventing treatment from reaching her in time.
During cross-examination, Dr. Giles conjectured that the level of cocaine in Thomas' system could possibly have caused death. Dr. Giles also testified that the stab wounds alone could have caused death and that the blunt trauma alone could have caused death. It was his opinion that Jeannette Thomas did not die from the cocaine and the level of cocaine was not "extraordinary" and likely would only have caused her to be high. It was also Dr. Giles's opinion that it was unlikely that treatment would have saved her had she not been high on cocaine. Judging the credibility of trial witnesses is primarily the responsibility of the jury. State v. DeHass (1967), 10 Ohio St.2d 230 . It is well within the jury's discretion to believe the coroner's opinion as to cause of death.
Finally, Bryant claims the testimony of Officer Robert Mauldin (hereinafter "Mauldin"), the crime lab technician who collected and processed much of the physical evidence, was self-serving and vague, uncertain, fragmentary, and insufficient to support a conviction. The only argument given for this claim is that the evidence collected: 1) the victim's tee shirt; 2) two knife blades; 3) a broken knife handle; 4) a broken piece of hammer; 5) blood swabs collected at 555 Idora Avenue, and; 6) a crack pipe, supports Bryant's description of events rather than the State's theory of the crime. The test for the sufficiency of evidence in a criminal appeal is whether reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt. State v. Black (1978), 54 Ohio St.2d 304.
Mauldin's testimony consisted of identifying the evidence collected and explaining the tests conducted upon that evidence. There was some question about the tee shirt as it did not have Mauldin's customary identifying mark on the evidence bag. However, Mauldin identified the shirt by distinctive tears in the material. Also, there was some confusion during Mauldin's testimony about which of the three knives were found at the scene, collected at the hospital and at the coroner's office. The smallest knife was found at the scene. The knife with the broken handle was collected at the coroner's office after being removed from Thomas' back. The third knife was collected at the hospital after it had been removed from Thomas' side. These slight discrepancies do not appear to be self-serving although they may seem uncertain or fragmentary. A photograph of the crime scene was entered into evidence showing the smallest knife on the floor of the victim's bedroom and only one knife had the handle broken off. Recovery of the crack pipe does give credence to Bryant's contention that Thomas was under the influence of cocaine. However, this point is not disputed by the State. It was clearly established Thomas was high on cocaine.
Jeanette Thomas was stabbed six times in her back and side and hit on the head with a hammer fourteen times. She called 911 for help while Bryant went into the bathroom to wash his hands before he left. She told 911 that Bryant was killing her and stabbing her. Bryant claims he was only acting in self-defense. He claims Thomas attacked him with a knife and he was forced to retaliate in fear for his own life.
Sitting as a thirteenth juror this court independently reviews the evidence and the related inferences and assesses the weight and credibility of each witness's testimony. The power to reverse a conviction on the manifest weight of the evidence should be exercised with caution. The conviction should be reversed only if the evidence weighs heavily against conviction. State v. Allen (1990),69 Ohio App.3d 366, 374, citing State v. Martin (1983), 20 Ohio App.3d 172. It does not appear that the jury lost its way in weighing the evidence creating a manifest miscarriage of justice. The jury's decision was based on credible, competent evidence and this court will not overturn it's findings. Bryant's fourth assignment of error is meritless.
Finally, Bryant has raised two assignments of error in a pro se brief which was filed without leave of court on January 12, 2001, and supplemented on March 9, 2001. An accused does not have the constitutional right to act as his own co-counsel where the State has appointed an attorney to represent him. State v. Thompson (1987),33 Ohio St.3d 1, 6. This appellate court has the discretion whether to address arguments raised in a pro se brief when that appellant is represented by counsel who has already filed a brief. State v. White
(1991), 71 Ohio App.3d 50, 557. "This court adheres to a policy whereby appellants must submit all filings through appointed counsel, and we will not consider arguments raised in pro-se briefing unless we have granted leave to file a supplemental brief." State v. Beaver (1997),119 Ohio App.3d 385, 402. Because Bryant did not obtain leave to file his supplemental brief, we will not consider the issues raised therein.
For the foregoing reasons, we find Bryant's assignments of error to be meritless and affirm his conviction and sentence.
Vukovich, P.J., Concurs. See concurring opinion.
Waite, J., Concurs.